COLUMBIA NATIONAL LIFE INSURANCE COMPANY, PROSECUTOR-RESPONDENT, v. CARL K. WITHERS, COMMISSIONER OF BANKING AND INSURANCE, DE-FENDANT-APPELLANT.

Submitted May 27, 1938—Decided September 16, 1938.

For the appellant, *David T. Wilentz,* attorney-general, and *Louis J. Cohen,* assistant attorney-general.

For the respondent, *Osborne, Cornish & Scheck* (*Abram H. Cornish* and *Ervin S. Fulop*), and *Frederick H. Nash* (of the Massachusetts bar).

The opinion of the court was delivered by

Parker, J.   The Supreme Court, on *certiorari,* set aside an order of the commissioner of banking and insurance, made by authority of the act of 1907 (*Pamph. L., p.* 136) which provides that:

"4. No form of policy of life insurance shall be issued by any domestic company, or be issued or delivered within this

state to any resident thereof by a foreign life insurance company, until after such form shall have been filed with the commissioner of banking and insurance. If the commissioner shall at any time notify any company of his disapproval of any such form, as contrary to law, specifying particulars, it shall be unlawful for such company thereafter to issue any policy in the form so disapproved. Such disapproval of the commissioner may be reviewed by a writ of *certiorari."*

The section, with slight verbal modifications, appears in *Rev. Stat.* 1937 as *Rev. Stat.* 17:34-18.

The order in question disapproved policy forms filed by the respondent, on the ground that provisions therein calling for interest on policy loans at six per cent. per annum, payable in advance, were in violation of our Usury act. The Supreme Court, on *certiorari* as provided in the act, set aside the order of disapproval, on the ground that the contract of insurance is a Massachusetts contract, and, as we gather from the opinion, *ubi supra*, being valid by the law of Massachusetts, it cannot be questioned here.

We concur in the disposition of the cause by the Supreme Court, but not for the reason given by that court. A foreign insurance company desiring to do business in this state must obtain a permit to do so from the commissioner of banking and insurance, whose duty it is to see that certain statutory regulations, including those touching the framework of policies, are duly complied with. One requirement is that quoted at the outset of this opinion, that policy forms are to be filed with the commissioner and approved by him before a policy in any such form shall be issued or delivered within this state to any resident thereof by any foreign insurance company. Delivery in this state, to a resident of this state, of a policy contract "accepted" at the domicile of the foreign corporation, whatever the *situs* of the contract, constitutes "doing business in this state" in the intendment of the statute, and a prerequisite to delivery in this state is that such policy shall be in form lawfully approved by the commissioner.

We turn to the meritorious question involved, which is, whether the commissioner was right in holding that a clause

providing for interest on policy loans at six per cent. per annum, payable in advance, was in violation of the Usury act. The usury legislation is very old, going back apparently to Henry VIII in England. The law in force at the time of the Revolution was 12 *Anne Stat.* 2 *c.* 16 (1713). In 1846 it read thus: "No person shall, upon any contract, take, directly or indirectly, for loan of any money * * * above the value of six dollars for the forbearance of one hundred dollars for a year, and after that rate for a greater or less sum, or for a longer or shorter time." R. S. 1847, page 795. Later, it was changed to read: "no person or corporation," &c. Rev. 1877, page 519. Changes in the rate are immaterial for present purposes. In its present form it reads: "Except as provided by law, no person shall," &c. *Rev. Stat.* 31-1.1.

From a multitude of decisions in many jurisdictions, far from uniform in their holdings, one point seems to stand out clearly, namely, that banking institutions as lenders have for generations deducted in advance the interest on loans made by them. It is common knowledge that this is done every day in this state and elsewhere; but the decisions in this state are few and unsatisfactory. The brief for appellant quotes the text of 66 *C. J., tit. "Usury,"* 207, § 130, pointing a distinction between long term obligations (*i. e.,* over a year) and short term obligations, in the matter of deducting interest in advance; but challenges it as illogical, and italicizes the phrase "among banks and other persons dealing in commercial paper," by way of distinguishing the case at bar. The New Jersey case particularly noticed in the brief, *Sussex Bank* v. *Baldwin* (1840), 17 *N. J. L.* 487, fails to meet the issue squarely. But there is no question that the collection in advance of interest on a short term note is an every day affair, and has been so for generations, as witness the testimony of the cashier in the Sussex Bank case at *p.* 505. It is true that in 1899, in the revision of the Banking act (*Pamph. L.,* 431—at *p.* 440) the legislature expressly recognized the practice of deducting interest in advance, "according to the ordinary usage of banking institutions;" but that added nothing but legislative recognition to a cus-

tom of interpreting the Usury act which by long usage had attained the force of law. And for that interpretation there is eminent legal authority. There is nothing in the statute prescribing *when* the interest is to be "taken," and in *Lloyd* v. *Williams, 2 Wm. Bl.* 792, cited by respondent, the court said, and we think most pertinently, "that interest may as lawfully be received beforehand for forbearing, as after the term is expired for having forborne." If this be a correct rule, and we think that it is, the case seems to become an ordinary problem in percentage, in which the ascertainment of the arithmetical base is the prime requisite: and the argument that if A agrees to lend B $1,000 for a year at six per cent., and hands B $940, he is taking usurious interest, rests on the false assumption that A is not entitled to collect his interest until the end of the year and that B may not legally bargain to pay the interest in advance. We approve, in general, of the treatment of this matter in 27 *R. C. L.* 225 and 226 cited in respondent's brief, and can see no reason for any distinction between banks and other creditors. The propriety of the practice is recognized in the Supreme Court of the United States. *Fleckner* v. *Bank of U. S.,* 8 *Wheat.* 338; *Fowler* v. *Equitable Trust Co.,* 141 *U. S.* 384; *Thornton* v. *Washington Bank, 3 Pat.* 36. It was recognized in Massachusetts as early as 1832. *Agricultural Bank* v. *Bissell,* 12 *Pick.* 585, 589; and applied in that state to a policy loan. *Swift* v. *Columbian, &c., Co.,* 260 *Mass.* 399; 160 *N. E. Rep.* 266. We adopt the rule laid down in those decisions, and think the cases cited to the contrary for the appellant are properly distinguished as resting on statutes, the language of which plainly forbids the taking of interest in advance.

For these reasons we agree with the Supreme Court that the commissioner was not legally justified in rejecting the policy forms because of the clause regarding advance payment of interest, which, it may be remarked in passing, has been a part of its policies approved in this state since 1914. The judgment of the Supreme Court setting aside the order under review is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, CASE, DONGES, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 13.

*For reversal*—None.