JACOB SILVERSTEIN AND SHIRLEY SILVERSTEIN, HIS WIFE, ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL OTHER MORTGAGORS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS, v. SHADOW LAWN SAVINGS AND LOAN ASSOCIATION, A BODY CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued November 9, 1965—Reargued November 22, 1966
Decided January 17, 1968.

32

Mr. *Eugene W. Landy* for plaintiffs-appellants (*Messrs. Landy, Bonello & Bonello,* attorneys; *Mr. Landy,* of counsel).

Mr. *Edward C. Stokes* for defendant-respondent.

Mr. *Israel Spicer* on reargument for New Jersey Bankers Association, *amicus curiae.*

Mrs. *Marilyn Loftus Schauer,* Deputy Attorney General, on reargument for the Commissioner of Banking and Insurance of the State of New Jersey, *amicus curiae* (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; Mrs. *Schauer,* of counsel and on the brief).

Mr. *Theodore H. Davis* on reargument for New Jersey Savings and Loan League, *amicus curiae.*

Mr. *Robert F. Darby* on reargument for Savings Banks' Association of New Jersey, *amicus curiae.*

The opinion of the court was delivered by

HALL, J. This case concerns the method of computing interest on a long term amortizing mortgage bond, payable in equal monthly installments covering interest and principal. The question is whether what is roughly referred to as a "365 day year" or a "360 day year" is to be used in the computation. It arises under a claim asserted by the plaintiffs-mortgagors against their mortgagee for breach of contract. Usury is not involved in this case. The action was framed as a purported class suit on behalf of all mort-

gagors of defendant similarly situated. The Chancery Division granted summary judgment in favor of defendant on the substantive issue and so found it unnecessary to determine whether the suit was a class action. Plaintiffs' appeal to the Appellate Division was certified on their application before argument in that tribunal. *R. R.* 1:10–1A.

Following the original argument of the appeal, we felt the question was of such importance to all lending institutions in the state as to call for information respecting the custom and practices of lenders and a further expression of views on the problem. To that end we invited briefs and oral participation by the Commissioner of Banking and Insurance and the other *amici curiae* and held a reargument.

The facts as to the substantive issue insofar as it concerns plaintiffs are undisputed. On November 23, 1959, the defendant made a mortgage loan to plaintiffs in the amount of $20,300. The covenant of the obligor contained in the bond, so far as pertinent, was: "To repay the Obligee the aforesaid principal indebtedness *with interest at the rate of five & one-half per cent (5½%) per annum,* to be computed from the 23rd day of November, 1959, * * * in the manner following: By the payment of One Hundred Twenty four Dollars 67/100 ($124.67) per month on the first day of each and every month hereafter, beginning January 1st, 1959 [*sic;* presumably 1960 was intended], or on such other day as may be appointed for that purpose until the entire principal sum of $20,300.00 plus interest and all other charges hereunder shall have been fully paid and satisfied".[1] (Emphasis supplied).

---

[1] The term "other charges" refers to the further obligation of the mortgagor to pay all taxes and other governmental levies on the mortgaged premises and to keep the premises insured for the benefit of the mortgagee, to secure which the mortgagor also agreed to pay an additional sum monthly estimated to be the equivalent of one-twelfth the amount annually required therefor, to be held and paid out by the mortgagee for such purposes. The $124.67 monthly figure did not include such additional sum and that sum is not involved in the case.

The bond further provided that the monthly payment was to be applied: "To the reduction of the principal indebtedness hereby evidenced, which indebtedness shall be balanced and stated monthly, and interest computed on the balance of the indebtedness remaining unpaid at the end of the preceding month". This simply means that the monthly payment is first credited to the extent necessary to cover interest for the preceding month on the unpaid balance and the remainder to the reduction of principal.[2]

Although the bond did not set forth a terminal date, it was clearly intended to be a 25 year obligation. The defendant's records so denominated it and the plaintiffs so understood. Indeed, this was the statutory limit at that time on direct reduction mortgage loans by savings and loan associations, *N. J. S. A.* 17:12A–78 providing that "[e]ach direct reduction loan shall require periodical payments sufficient to pay the principal and interest of the loan in full in a period of 25 years or less". (The maximum term was subsequently increased to 30 years. *N. J. S. A.* 17:12B–147).

More important—and this leads to the nub of the controversy — is that the monthly payment of $124.67 would mathematically satisfy, within a few cents, the principal and interest of the obligation in exactly 25 years (300 payments) from its date, computing the interest by the method plain-

---

[2] The bond also contained a "late charge" provision authorizing the mortgagee to exact an additional two cents per dollar if a monthly payment, due on the first of the month, was not paid until after the 15th. That provision is also not involved in the case.

The instrument further included this provision: "Every right, power and remedy herein conferred, or conferred in the mortgage accompanying this bond, is cumulative of every other right or remedy of Obligee, whether herein or by law conferred, and may be enforced concurrently herewith". While defendant appears to place some reliance on this provision, it does not point to anything additional in the mortgage securing the bond which bears on the question before us. The sentence does no more than set forth the inherent legal proposition that rights and remedies of the obligee specifically or impliedly granted by law, but not spelled out in the instrument, are to be considered as included therein.

tiffs say must be used and in fact was utilized in arriving at this monthly payment figure.

This method, in determining the portion of each monthly payment to be allocated to interest, calls for dividing the annual interest rate specified in the obligation by 12 (the number of months in a year) and then multiplying the unpaid balance by the percentage so obtained (the monthly factor), regardless of the exact number of days in the particular month. A variation producing the same result is to divide the annual interest rate by 360, multiplying the unpaid balance by that figure (the daily factor) and then further multiplying that result by 30, again regardless of the exact number of days in the particular month. These methods are commonly referred to as the 360/360 basis of computation.

Another method is to divide the specified annual rate by 365 (or 366 in case of a leap year), multiply the unpaid balance by that figure (the daily factor) and then further multiply that result by the exact number of days in the month involved. This method is generally referred to as the 365/365 basis. Over a full year's period the 360/360 basis will not produce more interest for that year than the exact amount the specified rate calls for and the total will be arithmetically the same as if the 365/365 basis were utilized. For this reason we refer to these methods, for purposes of this case, as computed on a "365 day year".

Tables are prepared by publishing companies for the use of lenders in arriving at the necessary monthly payment figure to amortize a mortgage loan in the desired number of years as well as tables showing the amount of each such payment to be allocated to interest and to principal during the prescribed term. These tables are customarily computed on the 360/360 monthly factor basis. They were admittedly utilized by defendant in arriving at the $124.67 monthly payment amount set forth in the bond and in allocating that sum between interest and principal on this loan until some time in 1962.

In that year, defendant changed its method of computing interest and has since applied the new method to determine the allocation of each $124.67 payment. It did so without giving any notice whatever to plaintiffs or other mortgagors affected thereby. This method involves a 365/360 basis of computation, which we refer to as the use of a "360 day year". It is applied by dividing the annual rate of interest by 360, multiplying the unpaid balance by the percentage so obtained (the daily factor) and then further multiplying that result by the exact number of days in the particular month for which interest is being computed.

The arithmetical results of this computation method are several. The annual rate is increased by 1/72 of 1 per cent, raising it in this case from 5.50 per cent to approximately 5.57 per cent for the balance of the term. (If an obligation called for interest at 6 per cent, the actual rate would become about 6.08 per cent). There will be principal remaining unpaid here at the end of 25 years (300 payments of $124.67 each). According to the plaintiffs, this will amount to $625.23. While defendant questions this exact figure without offering what it considers to be the correct amount, it concedes that the loan will not be paid in full after 300 such payments. This means it will not be satisfied within the 25 year statutory limitation, although our decision does not turn on this fact. It is also clear that if the 365/360 computation method is to be utilized from inception of a loan, the monthly payment to satisfy it within the intended term would have to be substantially larger than that required if the 360/360 or the 365/365 basis is to be used.

The reason given by defendant for the change in computation method in 1962 is that it had installed electronic computing equipment making daily factor use feasible, which had previously been impractical by hand arithmetic. This is truly no more than a pretext since, concededly, computing equipment may be programmed to utilize a 365 day year daily factor basis as easily as that of a 360 day year.

After plaintiffs discovered what defendant had done, the complaint herein was filed, alleging in substance that the new method of computing interest is illegal and that its use constitutes as well a breach of their contract with defendant. Although the demand for judgment was phrased somewhat differently, it in effect sought a declaratory judgment and restatement of plaintiffs' account, and those of all other of defendant's similarly affected mortgagors, on the basis of the interest computation method previously used, together with, under the class action thesis, an award of counsel fees.

Defendant has contended throughout, now joined by *amicus curiae* New Jersey Savings and Loan League, that the 365/360 method is one accepted means of computing interest which has been used by financial institutions for decades and so might legally have been utilized at the inception of plaintiffs' loan on the thesis of customary usage. They further assert that the method was accorded legislative approval by the 1953 amendment (*L.* 1953, *c.* 150) of the usury law, *N. J. S. A.* 31:1–1. Under either thesis it is said the shift to the method during the course of plaintiffs' loan was therefore not wrongful.

Because of the reliance placed by defendant on the claimed customary practice of financial institutions, we asked the *amici curiae* to advise us on this subject. The Commissioner of Banking and Insurance, New Jersey Bankers' Association and Savings Banks' Association of New Jersey report that, as a result of surveys they undertook, the overwhelming practice of commercial banks, savings banks, and insurance companies in computing interest on long term monthly payment mortgage loans is to utilize the 360/360 or 365/365 basis. The Commissioner, who had not taken a definitive position previously, now positively states that "a 360 day basis divided by 12 months of 30 days each [*i. e.* 360/360] * * * should be used when parties have not specifically agreed to a basis for computing interest. * * *" The Savings and Loan League advises that a majority of savings and loan

associations currently use the 365/360 method as distinct from the 360/360 or 365/365 basis for mortgage loans. We take it that this practice is of relatively recent origin, as in the case of defendant. Indeed, direct reduction mortgage loans themselves were not common until after the depression years.

The Bankers Association points out that the 365/360 basis is the general practice of banks with respect to short term and demand loans, construction mortgages, and commercial loans secured by mortgage. We presume this is because such loans, expressly or in initial contemplation, are not expected to extend beyond one year. Convenience in manual computation of interest for such short periods apparently dictated in times past the treating of 30 days to be 1/12th of a year, 90 days 1/4th of a year, etc., the difference in amount from figuring each day as 1/365th of a year being very slight. We understand banks in more recent years have come to use prepared tables computing interest on such obligations by the daily factor, 365/360 method. Since such a large number of loans fall in this category, business mathematics textbooks frequently designate the 365/360 method as "ordinary simple interest" and the 365/365 or 360/360 method as "exact simple interest".

■ Even if long time usage alone be adequate to establish the legality of a method of interest computation (compare *itmars v. Camden Trust Co.*, 10 *N. J.* 471, 498 (1952) with *Columbia National Life Ins. Co. v. Withers*, 121 *N. J. L.* 54, 56–57 (*E. & A.* 1938)), a question on which we are not called upon to decide here as to any type of loan, this survey of practices demonstrates that sufficient custom or usage does not exist as to the use of the 365/360 basis in computing interest on long term monthly payment mortgage loans. It is clearly not enough that a portion of one segment of the whole financial community making such loans now utilizes it.

■ Nor can we agree with the defendant's alternative contention, which was accepted by the trial court, that the

use of the 365/360 computation method in the instant type of obligation received legislative sanction through the 1953 amendment of *N. J. S. A.* 31:1–1. While, in view of the obscurity and seeming breadth of some of its language, there may be some doubt as to the precise purpose and scope of this amendment, which need not be definitely resolved in this opinion, we are thoroughly satisfied that it was not intended to have the claimed effect with respect to long term amortizing mortgage loans. The Commissioner of Banking and Insurance and the Savings Banks' Association of New Jersey express the same conclusion in their briefs. We are convinced this view is dictated by the background and legislative history. (Everyone agrees that no other statutory provision touches the question).

Prior to the amendment, *N. J. S. A.* 31:1–1 represented the basic usury law of the state and, in a single sentence, simply prohibited the taking of more than 6 per cent interest upon contract for any loan, unless otherwise provided by law. *L.* 1953, *c.* 150 added these two additional sentences:

"When, however, pursuant to any such contract, interest or discount is taken or reserved for a period of less than one year, or when interest is required to be paid at intervals of less than one year, such interest or discount may be computed on a daily basis, or on a monthly basis, or on a combination of both such bases when the period for which interest or discount is taken or reserved contains one or more months and one or more days; and, in any such case, a day shall be deemed to be a one three hundredth and sixtieth part of a year, and a month shall be deemed to be a one-twelfth part of a year, regardless of the number of days contained in such month. Any computation of interest or discount made on any such basis shall constitute a compliance with this section, and any such basis may be applied regardless whether the principal debt is payable in more than or less than one year from the time of making the loan."

The statement annexed to the bill (the bill was not amended during passage) reads:

"The purpose of this bill is to authorize the computation of interest or discount *at the legal rate* on the basis of a 360 day and a twelve-month year *when the period for which interest or discount is taken is less than one year.*" (Emphasis added).

The then Commissioner of Banking and Insurance, in a memorandum to the Governor recommending approval of the measure, said this:

"* * * It would authorize the computation of interest or discount at the presently existing legal rate, but on the basis of a 360-day year (instead of a 365 day year). Banks for many years calculated their interest and discount charges by using printed tables based on 360 days to a year. However, the Supreme Court of New Jersey in Ditmars v. Camden Trust Company (November 3, 1952), decided that charges based on 360 days to a year were in violation of R. S. 31:1-1, and that charges must be based on a 365-day year. Bankers and creditors generally, along with the firms selling printed interest tables, were greatly troubled by this decision. They maintain that applicable law should be amended to legalize the long existing method followed in calculating interest. Hence this bill sponsored, presumably, by the New Jersey Bankers Association.
* * *"

Among the numerous issues in the case referred to, *Ditmars v. Camden Trust Co., supra* (10 *N. J.* 471), was a claim of usury by the beneficiary of a trust against the trustee bank in its individual capacity with respect to interest charges on moneys he had borrowed from the bank. Although the facts are not entirely clear from the opinion of this court, our examination of the briefs and appendices discloses the situation was this: The loans were evidenced by demand notes bearing interest at the maximum permissible rate of 6%. The bank was authorized to deduct the interest quarterly from the borrower's income from the trust. It treated a quarter as 90 days and computed the interest each 90 days on the 365/360 basis pursuant to tables the institution had customarily used with respect to short term loans. The notes were carried without renewal for a number of years and, the principal of some $26,000 remaining unpaid, the bank brought suit therefor. The borrower claimed the computation method had resulted in a true annual rate exceeding 6% (which it actually had) and sought to have the full amount of the interest he had been charged, some $21,000, credited against the unpaid principal pursuant to

*N. J. S. A.* 31:1–3 and 4. When the bank learned of the borrower's contention, it recomputed the interest, presumably on the 365/365 basis, and credited the difference of $296.39 to the borrower. The actual issue at trial therefore related to the claim of the right to deduct all interest charged from the unpaid principal. The trial court found against the borrower, 10 *N. J. Super.* 306, *pp.* 342–345 (*Ch. Div.* 1950), holding that if there was usury, it was not actionable since factually the bank had computed interest in good faith and not as a cloak for usury and had no intention of making a usurious charge. The court went on to speak of the custom of banks: "The generally recognized commercial custom of banks in New Jersey to so compute interest *on short term obligations* amounts to an interpretation of the statute. The interest here was computed every ninety days. As in the matter of deducting interest in advance, there has existed for years a practical interpretation of the Usury Act. *Columbia Nat. Life Ins. Co. v. Withers,* 121 *N. J. L.* 54, 1 *A. 2d* 436 (*E. & A.* 1938). The existence of such a custom of computing interest, together with the other evidence herein adduced, demonstrates that the Trust Co. did not intend to violate the statute but, if there was a violation, it was committed in error". (10 *N. J. Super.*, at *pp.* 344–345). (Emphasis added).

The borrower appealed to this court, which affirmed, holding, as had the trial court, that a transaction is not usurious calling for the forfeiture of all legal interest where "the illegal interest is received by mistake or a miscalculation made in good faith, and not by intent to evade the usury laws, * * * although the illegal interest received must be repaid". 10 *N. J.*, at *p.* 498. Before stating this conclusion, however, the court said this:

"We are of the opinion that the calculation of interest at the maximum statutory rate upon a 360-day year is illegal, and that excess interest received in that manner should be repaid. Whether the practice could attain the force of law by long usage is doubtful in the absence of some indication of legislative recognition such as existed

in *Columbia National Life Ins. Co.* v. *Withers,* 121 *N. J. L.* 54, 56–57 (*E. & A.* 1938), and we find no convincing evidence in the record of this case of such a long usage in general throughout this State, although there is evidence that it long existed as a practice of the defendant." (10 *N. J.,* at *pp.* 497–498).

There can be no doubt the court was intending to speak, as had the trial court, with particular reference to short term obligations, including those payable on demand, the particular form of instrument before it. In this regard note may be taken of the reference in both opinions to *Columbia National Life Ins. Co. v. Withers, supra,* where the Court of Errors and Appeals pointed to the long existing custom of lenders to collect interest in advance on short term obligations and to the distinction that long term obligations were those to extend "over a year". 121 *N. J. L.,* at *p.* 56. Bankers were obviously troubled because the quoted expression of view appeared to render illegal, at least as far as usury was concerned, if not also where the specified rate was less than 6 per cent, the long established custom—not adequately evidenced to the court then, but established to our satisfaction in the instant case—of computing interest by the 365/360 method on short term obligations. Furthermore the court's reference to the 360 day year might also have engendered the belief that the court was further saying the 360/360 method was illegal, no matter what rate of interest was specified, at least where the obligation was not to extend a full year.

With this background to the 1953 amendment, we tend to believe that, despite the seeming breadth of some of the language, its purpose was to sanction the 365/360 computation method as to short term (less than a year) obligations, including demand notes, regardless of the specified rate of interest, and also likewise to sanction the 360/360 method when, as the statement annexed to the bill said, "the period for which interest or discount is taken is less than one year". (As we earlier pointed out, there is no mathematical

difference in result between the 365/365 and 360/360 methods when the interest is taken for a full year or years).

We specifically hold, in line with the views expressed by the Commissioner and the Savings Banks' Association of New Jersey that the amendment was certainly not intended to approve the 365/360 method in the case of long term amortizing mortgage loans where the instrument states that the debt is to bear interest "at the rate of —— per cent", whether interest be payable monthly or at longer intervals. In such a situation the period for which interest is "taken" is for the full term of the loan—25 years in the instant case.

It is elementary that interest as compensation for the use, detention or forbearance of money is a matter of contract. *Deerhurst Estates v. Meadow Homes, Inc.*, 64 *N. J. Super.* 134, 154 (*App. Div.* 1960), certification denied, 34 *N. J.* 66 (1961) ; *Kraynick v. Nationwide Ins. Co.*, 80 *N. J. Super.* 296, 302 (*Law Div.* 1963). The contract includes the method of computation, expressed or legally implied. Where the obligation is to extend for more than a year and the instrument sets forth nothing more than that the debt shall bear interest at a specified rate—with or without the addition of the phrase "per year", "per annum" or the like—, we hold that the intention of the parties must legally be taken to be that interest shall be computed only by either the 365/365 or the 360/360 method. If anything more be needed, and we do not think it is, the intent was made crystal clear in the case at bar when the monthly payment was concededly fixed on the basis of the 360/360 computation method. A change in the course of the loan to the 365/360 basis amounted to the unilateral fixing of a new and higher rate. See *Jersey City v. O'Callaghan*, 41 *N. J. L.* 349, 353 (*E. & A.* 1879).

The defendant was therefore guilty of a clear breach of contract in altering the computation method. Since plaintiffs' loan is still in existence, they are entitled to a restatement by the trial court of their account with defendant,

based on the 360/360 method, from the date when defendant departed therefrom.

There remains the question whether we should order this suit treated and further proceeded with as a class action. *R. R.* 4:36–1. Ordinarily such a matter is determined by a trial court before any substantive issue is reached. See 3 *New Jersey Practice* § 811 (rev. ed. 1960). We may observe that, in view of the fact the Commissioner of Banking and Insurance had previously taken an equivocal position on the substantive question here, plaintiffs cannot be said to have acted other than in good faith in instituting this litigation to settle that question.

Further, there is no doubt that a large, but presently unknown, number of defendant's mortgagors were treated as were plaintiffs when defendant changed its method of interest computation and are entitled to similar relief, although the exact monetary amount involved is likewise presently unknown. This is so despite the fact that we are told not all of the obligations involved were in exactly the same form or contained precisely the same language in the payment clause. We gather also that, after the change in computation method, new loans were made where substantially similar forms and payment clauses were used and the changed computation method wrongfully utilized from inception (as distinct from a change made in the course of a loan, as in plaintiffs' case), giving rise to a right to similar relief. In addition, we assume loans have been satisfied, either at or before maturity, since the change in computation method, where the appropriate relief would take the form of a cash refund in the amount of the interest overcharge rather than a restatement of an existing account. All of these situations seem to us to indicate that treatment of the case as a "spurious" class action would be justified, within the language of *R. R.* 4:36–1(c), as involving "* * * a common question of law or fact affecting the several rights and a common relief is sought".

Concededly, plaintiffs sought to bring this suit as a class action because otherwise such mortgagors would benefit from the result without having to contribute to the fair cost of the suit, including especially a reasonable counsel fee to plaintiffs' attorneys in the light of the work involved and the extent of the benefit to all, which they would be required to do if the suit were proceeded with as a class action. See *R. R.* 4:55–7(b); *Sarner v. Sarner*, 38 *N. J.* 463 (1962). But the conclusion here reached is naturally *stare decisis* as to defendant's other mortgagors whom we have pointed out as similarly affected. Furthermore, this defendant is subject to the supervisory and regulatory power of the Commissioner and we feel certain that a class judgment is not required to assure that he will see to it that our conclusion is fully and promptly implemented for the benefit of all entitled mortgagors.

We think therefore that it would be an unnecessary prolongation of this litigation for us to direct that the trial court proceed with it now as a class action, but that, in fairness to plaintiffs and their attorneys, it ought to be treated as such for the purpose of awarding a counsel fee to plaintiffs' attorneys. We consider this to be within the spirit of *R. R.* 4:55–7(b). *Cf. Red Devil Tools v. Tip Top Brush Co., Inc.*, 50 *N. J.* 563 (1967). The sum of $5,000 is hereby fixed as full compensation for all services in the trial court and this court, to be ordered by the ultimate trial court judgment to be paid in the first instance and at once by defendant. The defendant may deduct the same *pro rata* from all credits on restatement of accounts and cash refunds after the total amount thereof has been computed. The trial court shall retain jurisdiction to determine any questions which may later arise in connection therewith.

The action of the Chancery Division in ordering summary judgment for defendant is reversed and, there being no factual dispute, the cause is remanded to that court for the restatement of plaintiffs' account and entry of judgment in their favor accordingly.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.