933 A.2d 621 (2007)
396 N.J. Super. 207
Elizabeth TRIMARCO, individually and derivatively on behalf of Inman Shopping Plaza, Inc., Plaintiff-Respondent,
v.
Anne TRIMARCO, John V. Trimarco, Phyllis Trimarco, and Robert Defilippis, Defendants/Third-Party Plaintiffs, and
Inman Shopping Plaza, Inc., a New Jersey corporation, Defendant/Third-Party Plaintiff-Appellant,
v.
Linda Serrano, Estate of Richard Trimarco and Fitness Plus, Inc., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2007.
Decided October 15, 2007.
*623 Julian Wilsey, Livingston, argued the cause for appellant (Franzblau Dratch, attorneys; Mr. Wilsey, on the brief).
Craig S. Provorny argued the cause for respondent (Herold and Haines, attorneys; Mr. Provorny, of counsel; Lisa M. Gowen, Warren, on the brief).
Before Judges LINTNER,[1] PARRILLO and SABATINO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Upon termination of her employment contract with defendant Inman Shopping Plaza, Inc. (Inman), plaintiff Elizabeth Trimarco, a one-sixth shareholder, sued the company as well as two other shareholders, John and Phyllis Trimarco, and a former company officer, Anne Trimarco, (collectively the Trimarco defendants), both individually and derivatively on behalf of Inman, utilizing the services of the law firm McCarter & English, LLP (M & E). Following settlement of all claims, cross-claims, counterclaims and third-party claims save for attorneys' fees, plaintiff and M & E both moved for counsel fees pursuant to Rule 4:42-9(a)(2), the former seeking reimbursement of $64,759.84 in fees already paid to M & E for services from July 2002 to April 2003, and the latter seeking unpaid fees of $89,000 generated from May to September 2003. By orders of February 28, 2006, the Law Division judge directed Inman to pay plaintiff $38,215.84 and to pay M & E $49,801.60. Inman ultimately settled with M & E as to the second order and appeals only from the first, awarding plaintiff counsel fees.
Some background is in order. Inman is a closely-held, family run business, incorporated in New Jersey in May 1986. Its sole asset is real estate in the Township of Woodbridge, on which is situated a shopping center consisting of two buildings housing about ten tenants, and a parking lot. The company was founded by two brothers, John and Nicholas Trimarco, whose equal shares, upon their deaths, devolved to their widows, who in turn each transferred their fifty percent shares equally to their three children. After John's death in 1993, his widow Anne functioned as Inman's de facto president while her son Richard, to whom plaintiff was married, assumed responsibility for day-to-day management of the company. Richard and his siblings, John Jr. and Phyllis, therefore owned fifty percent of Inman and their cousins, Kenneth, Laura and Judy (the non-defendant Trimarcos) Nicholas' childrenowned the remaining one-half although they were at the time completely passive shareholders, not involved in company operations.
Richard died in January 2002 and plaintiff inherited his one-sixth share, sharing management of Inman with her sister-in-law Phyllis pursuant to an employment contract, fixing her annual salary at $40,000 with medical benefits. Plaintiff was terminated six months later by Anne. According to plaintiff, during her short tenure as Inman's co-manager, she uncovered evidence of misconduct, corporate malfeasance and improper use of company assets by the Trimarco defendants in their *624 management of Inman and as a result she was fired.
Consequently, in July 2002, plaintiff filed suit against Inman and the Trimarco defendants alleging both wrongful termination and, on behalf of the shareholders, derivative claims of corporate misconduct under N.J.S.A. 14A:12-7. As to the latter, count three of plaintiff's nine-count complaint sought relief for statutory oppression of a shareholder due to the Trimarco defendants' breach of fiduciary trust based on their "misconduct and mismanagement of Inman" for their own "pecuniary gain to the exclusion of Inman's other shareholders." The Trimarco defendants answered, counterclaimed and filed a third-party complaint against, among others, Richard's estate, alleging misconduct on their part.
Discovery ensued through August 2003. Pursuant to court order in the interim, in July 2003 a shareholders' meeting was held at which time the non-defendant Trimarcos allied themselves with plaintiff and voted to oust the Trimarco defendants as officers and members of the Board of Directors. Plaintiff was elected president on a temporary basis. In that capacity, plaintiff attempted to use $263,647.92 in corporate funds to pay M & E's and another law firm's outstanding counsel fees and to reimburse herself for monies she already expended in legal fees on behalf of Inman. The non-defendant Trimarcos resisted and as a result of an order to show cause filed by Inman, plaintiff, M & E, and the other law firm were ordered to disgorge the fees. In so ruling, the judge also acknowledged the action had been started primarily as a derivative action on behalf of the corporation to remedy alleged wrongful acts committed by the Trimarco defendants, and that while such reimbursement was premature at the time, plaintiff could be entitled to recover counsel fees if it were later determined that she had been successful in her allegations.
In any event, as a result of additional information uncovered in discovery, on September 11, 2003, plaintiff filed an amended complaint adding new derivative claims of malfeasance by the Trimarco defendants, including usurpation of corporate opportunity by Anne's purchase of a contiguous lot (Lot 7) onto which she intended to move Inman's anchor tenant Walgreen's for her sole benefit. The complaint also sought ownership of a parcel of the property (Lot 6) on which Inman operated the shopping center, title to which was apparently disputed but in Anne's name. Inman answered plaintiff's amended complaint and counterclaimed, and in its cross-claims and claims for contribution against the Trimarco defendants asserted identical claims to those alleged by plaintiff in her original and amended complaints.
All substantive claims in the matter eventually were settled. As between Inman and the Trimarco defendants, Anne was required to sell the disputed lot to Inman. Plaintiff's employment claims against Inman and the Trimarco defendants were dismissed and the Trimarco defendants dismissed their claims against plaintiff as well as their third-party complaint. Inman and plaintiff also settled their respective claims against each other, save for the issue of Inman's responsibility to reimburse plaintiff for fees paid M & E between July 2002 and April 2003 in pursuing her derivative claims on behalf of Inman. Beyond that, the only other outstanding issue concerned M & E's related motion for counsel fees generated between May and September 2003.
These residual attorney fee matters were considered on February 3, 2006. Following briefing, examination of M & E's detailed time billing invoices, and oral argument, the Law Division judge determined *625 that plaintiff was entitled to payment of that portion of legal fees she incurred pursuing claims asserted on behalf of Inman's shareholders because assertion of those claims had benefited Inman and its shareholders and resulted in the preservation and protection of a fund in court, pursuant to Rule 4:42-9(a)(2).[2] Accordingly, of the $65,566.34 invoiced fees incurred for the period July 2002 through May 2003 and previously paid by plaintiff to M & E, plaintiff sought reimbursement for $64,759.84, and the trial judge allowed only $38,215.84, finding the balance of the fees to have been unreasonable and overbilled.[3]
As to plaintiff's entitlement to counsel fees, generally, the court reasoned in part:
After all that was unearthed with regard to proving that several stockholders or members of the board of the corporation were in fact using corporate funds [to] benefit their private lives as a result of the complaint and various decisions by the Court, other family members who had not been involved with the corporation were brought into the corporation and a new board of directors or shareholders were formed with new rules and regulations, property that was purchased or was being used by the old corporation members for their own private right and benefit, was returned to the corporation. And again, it would appear that as a result of Ann[e]'sstrike thatof Elizabeth's [plaintiff's] suit, the entire corporate family has and will be benefited. And, therefore, based upon the findings that Elizabeth was not only advocating her own individual interest, she was advocating on behalf of the Inman Shopping Plaza corporation that Rule 4:49-9[(a)](2) is the Rule that will allow this Court to grant payment of attorney's fees to McCarter and English.
In determining the amount due plaintiff, the judge distinguished between plaintiff's individual and derivative claims:
I am not finding that Elizabeth Trimarco is entitled to the amount of attorney's fees that she requested in her motion, that being $64,759.81. I find that in light of the fact that Elizabeth's own complaint did include a charge of wrongful termination or wrongful discharge that that was an individual issue that Elizabeth would have to have defended or substantiated on her own and as a result, was not in anyway beneficial to the new Inman Shopping Plaza corporation. And, that in light of the fact that she didn't have to defend or she was bringing action on this particular complaint, that she is responsible for attorney's fees that wouldor that resulted in the investigation and representation by McCarter and English on her behalf. I find that sheshe should be liable for $28,318.16. Again, she paid *626 McCarter and English $66,000 approximately and as a result of her original complaint, again the corporation did derive several benefits, i.e., property that was purchased for the private personal benefit of individual shareholders, was returned to the corporation and therefore, the difference between Elizabeth's personal allegations filed in the complaint and the derivative charges that were upheld as a result of her charge bringing about the formation of the new corporation again, I separate those and find that $38,215.84 should have been charged to the new corporation and as a result, and Elizabeth should be reimbursed that amount since she already paid those monies to McCarter and English.
On appeal, Inman argues that plaintiff was not entitled to counsel fees under Rule 4:42-9(a)(2) because there was no "fund in court" and because of her own "unclean hands." Alternatively, Inman requests a remand because the award to plaintiff failed to adequately segregate legal fees attributable to her personal cause of action from those attributable to her derivative claims. We disagree with both contentions.
Rule 4:42-9(a)(2) is an exception to the American Rule that parties are responsible for payment of their own attorney's fees. Thus, the "`fund in court'" exception generally applies "`when it would be unfair to saddle the full cost upon the litigant for the reason that the litigant is doing more than merely advancing his own interests.'" Henderson v. Camden County Mun. Util. Auth., 176 N.J. 554, 564, 826 A.2d 615 (2003) (quoting Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168, 162 A.2d 834 (1960)). Therefore, "when litigants through court intercession create, protect or increase a fund for the benefit of a class of which they are members, in good conscience the cost of the proceedings should be visited in proper proportion upon all such assets." Sarner v. Sarner, 38 N.J. 463, 469, 185 A.2d 851 (1962) (citing Cintas v. Am. Car & Foundry Co., 133 N.J. Eq. 301, 305, 32 A.2d 90 (Ch.1943), aff'd in part, rev'd in part, 135 N.J. Eq. 305, 37 A.2d 205 (E. & A.1944)).
"The term `fund in court,' however, is one of art." Id. at 467-68, 185 A.2d 851 (citing Sunset Beach Amusement Corp., supra, 33 N.J. at 168-69, 162 A.2d 834). It need not take the form of a "pot of money," but rather applies more generally where a party's actions have "created, preserved or increased property to the benefit of a class of which he is a member." Ibid. Included, obviously, are actions by a stockholder on behalf of the corporation. Sarner, supra, 38 N.J. at 468-69, 185 A.2d 851 (quoting Sunset Beach Amusement Corp., supra, 33 N.J. at 169, 162 A.2d 834). Nor need the "fund" be in the possession of the court:
It is not necessary that the fund be actually and physically in the possession of the court, or in the hands of the clerk of the court, or a receiver, or a trustee. It is sufficient if, as a result of the litigation, the fund is brought under the control of the court. An illustration of this is a suit to construe a will or a trust agreement. In such suits it is common practice to award counsel fees out of the decedent's estate or the trust fund, neither of which is in court, but is the subject-matter of the litigation and for that reason under the control of the court.
[Cintas, supra, 133 N.J. Eq. at 304, 32 A.2d 90.]
See also Silverstein v. Shadow Lawn Sav. & Loan Ass'n, 51 N.J. 30, 45, 237 A.2d 474 (1968).
*627 Thus, the Rule's exception allows attorney fee awards when a shareholder's derivative action results in the conferral of benefits, whether of a pecuniary or non-pecuniary nature, upon the defendant, that the defendant may, in the exercise of the court's equitable discretion, be required to yield in the form of an award of attorney's fees. Sarner, supra, 38 N.J. at 467-68, 185 A.2d 851. Other jurisdictions are in accord. See, e.g., Dardovitch v. Haltzman, 190 F.3d 125, 145 (3d Cir.1999); Serrano v. Priest, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1307 (1977), aff'd sub nom. Serrano v. Unruh, 32 Cal.3d 621, 186 Cal. Rptr. 754, 652 P.2d 985 (1982). In Fletcher v. A.J. Indus., 266 Cal.App.2d 313, 72 Cal.Rptr. 146, 148-49 (1968), another shareholder derivative action, the plaintiffs had obtained an order approving a settlement guaranteeing a beneficial change in corporate management and procedures as well as the arbitration of certain claims of managerial misconduct, with the possibility of future monetary awards. The Court of Appeal, affirming a trial court order awarding attorneys' fees and costs to the plaintiffs, held that although no specific "fund" had been created out of which such fees could be awarded on the "common fund" theory, the benefit conferred on the corporation and shareholders justified a shifting of the monetary burden of producing that benefit to all those who would enjoy it. Id. at 153-54.
Here, there can be no real dispute over the applicability of Rule 4:42-9(a)(2). Indeed, counsel essentially conceded in the Law Division the court's authority to require Inman to pay that portion of plaintiff's legal fees generated from pursuit of her derivative claims, and Inman has not appealed the court's order directing it to pay a portion of M & E's unpaid legal bills. Moreover, Inman incorporated by reference the derivative claims asserted in plaintiff's original complaint and developed in her amended one. In any event, it is clear Inman substantially benefited from plaintiff's litigation. As the trial court specifically found, "the things that the new corporation has gotten as a result, again, but for Elizabeth Trimarco, would not have happened." Included among the tangible benefits are undisputed title to a portion of land on which Inman's shopping center sits, with the concomitant right to income and revenues from rentals thereon; retention of its anchor tenant and prevention of lost corporate opportunity; and unquantifiable savings from elimination of past mismanagement and misconduct. Part of the intangible benefits conferred include new corporate governance and greater, more representative participation in company affairs. Clearly, then, plaintiff's litigation has created a "fund in court" for the benefit of Inman who, but for the court's award of counsel fees, would not have contributed to the cost thereof. We therefore find no abuse of discretion in the court's application of Rule 4:42-9(a)(2).
We also reject Inman's contention that plaintiff is barred from seeking Rule 4:42-9(a)(2) recovery because of her "unclean hands." Simply put, the counterclaims of misconduct against plaintiff have never been proven, and more significant, have been dismissed by virtue of the parties' settlement, with full knowledge that plaintiff would ultimately seek remuneration for the money she expended pursuing claims against the Trimarco defendants on behalf of Inman. On this score, the stipulation of settlement did not specify that defendant was preserving a right to litigate the substantive issues in the context of opposing plaintiff's fee application. Thus, it is Inman who is equitably estopped from asserting abandoned claims as a bar to plaintiff's recovery.
*628 Lastly, we perceive no abuse of discretion in the quantum of the counsel fee award. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 25, 860 A.2d 435 (2004); Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995). After careful review of M & E's detailed time billing records, the trial court significantly reduced the reimbursement soughta calculation reflecting not only an articulated division of the time allocated to individual and derivative claims, but as well a considered determination as to the reasonableness of the fee balance.
Affirmed.
NOTES
[1] Judge Lintner did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] The judge did not rely on the oppressed minority shareholder statute, N.J.S.A. 14A:12-7, as a basis for awarding counsel fees, presumably because the settlement obviated any need for the requisite finding of arbitrariness, vexatiousness, or lack of good faith. N.J.S.A. 14A:12-7(10); see also Torres v. Schripps, Inc., 342 N.J.Super. 419, 438, 776 A.2d 915 (App.Div.2001) (award of fees under N.J.S.A. 14A:12-7(10) is discretionary); Belfer v. Merling, 322 N.J.Super. 124, 146, 730 A.2d 434 (App.Div.), (award of fees under statute requires finding of arbitrariness, vexatiousness, or lack of good faith), certif. denied, 162 N.J. 196, 743 A.2d 848 (1999). Instead, the judge relied exclusively on the "fund in court" provision of Rule 4:42-9(a)(2).
[3] As noted, in a separate order of February 28, 2006, the judge also awarded M & E counsel fees for services rendered from May to September 2003. Inman and M & E have since entered into a settlement agreement as to the counsel fee award and Inman has not appealed that order.