16 A.3d 1057 (2011)
419 N.J. Super. 212
Paul R. PORRECA, Plaintiff-Appellant,
v.
CITY OF MILLVILLE, Defendant-Respondent.
Docket No. A-1185-09T1.
Superior Court of New Jersey, Appellate Division.
Argued: September 22, 2010.
Decided: January 24, 2011.
*1059 Steven E. Angstreich argued the cause for appellant (Weir & Partners LLP, attorneys; Mr. Angstreich and Amy R. Brandt, on the briefs).
Gerald J. Corcoran argued the cause for respondent (Montgomery, McCracken, Walker & Rhoads, LLP, attorneys; Mr. Corcoran, and Linwood and Georgette Fries, Cherry Hill, on the brief).
Before Judges AXELRAD, R.B. COLEMAN, and LIHOTZ.
The opinion of the court was delivered by
AXELRAD, P.J.A.D.
Plaintiff appeals from an order of the Law Division denying his request for attorney's fees following settlement of prerogative writs litigation under the "fund in court" exception to the general rule that parties are responsible for their own attorney's fees. R. 4:42-9(a)(2). The court found this exception inapplicable because the municipality made "substantial efforts" before the institution of suit to rectify the problems complained of by plaintiff and the court apparently did not view plaintiff as a prevailing party. The court also interpreted the release of "all claims for damages" in the settlement agreement as including claims for attorney's fees. We reverse and remand.
Plaintiff Paul Porreca, a resident and taxpayer of defendant, City of Millville ("City"), contacted City officials in September 2006 about perceived violations in their management of the tax abatement program. The parties sought to informally resolve plaintiff's concerns. On July 17, 2007, plaintiff filed a motion in the Law Division seeking an order permitting him to file suit against the City pursuant to N.J.S.A. 2A:15-18,[1] based on its alleged *1060 failure "to properly review, authorize and manage tax abatements granted by the City." By order of August 20, 2007, the court deemed the complaint attached to plaintiff's motion filed as a prerogative writs action ("Abatement litigation" CUM-L-764-07). The three-count complaint asserted malfeasance for failure to comply with N.J.S.A. 40A:21-1, -16, and the City Ordinance Article I, § 65-15; failure to comply with statutory and local ordinances regarding payment of municipal funds; and failure to discharge its duties under the City's municipal code. The City filed an answer to the complaint.
Similarly, around October 2007, plaintiff expressed concern that the City was failing to comply with and enforce its ordinances pertaining to review and inspection fees of various projects, and discussions ensued between the parties. On February 29, 2008, plaintiff filed a motion in the Law Division seeking an order permitting him to file another suit against the City pursuant to N.J.S.A. 2A:15-18, based on its alleged failure "to properly charge and collect Review and Inspection fees" as required by its municipal code, and to consolidate the action with L-764-07. By order of April 22, 2008, the court: (1) held N.J.S.A. 2A:15-18 inapplicable to plaintiff's proposed complaint and declined to permit plaintiff to file the complaint pursuant to that authority; (2) permitted plaintiff to file an action in lieu of prerogative writs against the City "in the nature of a mandamus related to the collection or attempt to collect review and/or inspection fees from developers" within the City; (3) stated plaintiff's complaint "shall not seek damages against the City"; and (4) consolidated the two suits for purposes of discovery.
On May 2, 2008, plaintiff filed the second complaint in lieu of prerogative writs alleging the City was not collecting review and inspection fees from developers as required by its municipal code ("Inspection Fee litigation"CUM-L-414-08). The City filed an answer to the complaint.
On July 7, 2009, the parties executed a settlement agreement addressing the claims in both the Abatement litigation and the Inspection Fee litigation. The agreement was silent as to the specific issue of attorney's fees. A month later, plaintiff filed a motion seeking an award of attorney's fees and costs for services rendered in connection with both lawsuits. The City filed opposition and a cross-motion for counsel fees and costs for defending the motion. Following argument on September 25, 2009, the court orally denied plaintiff's motion and the City's cross-motion, memorialized in orders of the same date. By orders of November 11, 2009, plaintiff's complaints were dismissed with prejudice pursuant to the settlement agreement, with plaintiff reserving the right to appeal from the court's denial of counsel fees. This appeal ensued.
On appeal, plaintiff argues: (1) he is entitled to an award of counsel fees under Henderson v. Camden County Municipal Utility Authority, 176 N.J. 554, 826 A.2d 615 (2003), which the court erroneously deemed inapplicable; (2) he is entitled to counsel fees as a prevailing party, which the court erroneously concluded otherwise; and (3) the court erred in concluding the release contained in the settlement agreement *1061 precluded an application for attorney's fees.

I.
Around September 2006, plaintiff contacted the City tax assessor with reported errors about how the City was managing the five-year local property tax abatement program in its Urban Enterprise Zone (UEZ). The alleged errors included granting abatements on untimely applications or without applications and failing to pursue added assessments for the gap period between completion of a project and January 1 of the following year. Plaintiff certified he also raised issues regarding cell tower assessments and the City's contract with Sun Bank pertaining to the collection of UEZ loan payments on behalf of the City.
City officials took action in response to plaintiff's inquiries. On December 19, 2006 and January 16, 2007, the governing body passed two resolutions (A-5666 and A-5683) rescinding a total of seven abatements that had been approved out of time. The Resolutions also directed the assessor to file an omitted assessment for each of the subject properties for the 2006 calendar year, but expressly declined to permit further action against them for years prior to 2006. As testified to by the assessor in depositions, the City's position was that it lacked the legal authority to collect for the years prior to 2006.
Plaintiff, however, among other items, wanted the City to collect the taxes due and owing from all prior years. About six months later, plaintiff initiated the Abatement litigation. He contended the City: (1) illegally granted tax abatements; (2) improperly entered into a no-bid contract with Sun Bank for it to collect UEZ loan payments on behalf of the City, advanced payments prior to the bank's performance, and permitted the bank to retain late fees it collected on the UEZ loans; and (3) permitted Nextel to construct and maintain its telecommunication towers without complying with the municipal ordinance and paying the requisite application and permit fees. Plaintiff claimed the City's conduct with regard to all counts of the complaint caused a loss of revenue to the detriment of the City and its taxpayers. He sought injunctive relief on all three counts.
In the first count alleging malfeasance, plaintiff sought to compel the City to rescind all illegally granted tax abatements and collect the full amount of property taxes owing during the full abatement and prior gap period. In the second count alleging failure to comply with statutory and local ordinances regarding payment of municipal funds, plaintiff sought to compel the City to rescind the Sun Bank contract and seek repayment from Sun Bank for ultra vires payments and late fees collected on the UEZ contracts. In the third count alleging failure to discharge its duties under the municipal code regarding the Nextel cell tower lease, plaintiff sought to compel the City to either rescind the lease or require Nextel to pay the requisite permit fees. In all three counts, plaintiff also sought to compel the City to comply prospectively with the applicable state statutes and local ordinances with respect to tax abatements, contracts and cell towers. In the ad damnum clause in all three counts, plaintiff sought counsel fees and costs of suit.
Shortly afterwards, plaintiff began to inquire about the City's compliance and enforcement of ordinances regarding in-house review and inspection fees for major development projects. By letter of October 29, 2007, the municipal attorney informed plaintiff's attorney that the administrators were advised to comply with the municipal code regarding such fees *1062 and services and to take appropriate action to collect fees presently due and owing. On November 6, 2007, John Knoop and Kim Warker (later known as Ayres), the City's engineer and planning director, respectively, sent a joint letter to the municipal attorney in direct response to plaintiff's inquiry, specifically referencing the new City policy of charging applicants for staff review time and the establishment of escrow accounts for each pending project. In subsequent depositions, Ayres elaborated that the planning department previously had not charged for professional staff review services for major developments but, beginning in November 2007, in response to plaintiff's inquiries, the City initiated procedures for requiring escrows and charging for in-house professional inspection and reviews.
Not satisfied with the City's efforts, plaintiff filed a second complaint in lieu of prerogative writs in May 2008, claiming the City failed to collect review and inspection fees from developers pursuant to the municipal code. The Inspection Fee suit sought injunctive relief seeking to compel the City to assess and seek payment of, or file suit to recover from, any developer who had not paid the review or inspection fees in the past ten years. The ad damnum clause also contained a demand for counsel fees and costs of suit.
On July 7, 2009, prior to trial, the parties executed a settlement agreement that addressed both the Abatement and the Inspection Fee litigation. The agreement describes action taken by the City before and after plaintiff initiated litigation. With regard to the tax abatement issue, paragraph 1 provides:
1. After complaints were made by Porreca, but before the commencement of the Abatement Litigation [,] the City began a review of the files of all individuals and businesses to whom abatements had previously been granted. As a result of the complaints made by Porreca, but before the commencement of the Abatement Litigation, the City determined that some of the abatements granted were improper as not having been timely requested. The City immediately notified those taxpayers that their abatement had been disallowed and that they owed the City additional real estate taxes and that going forward, they would not be entitled to real estate tax relief. In addition ... the City amended the abatement ordinance and revised its procedures for granting abatements making certain that no abatement is granted without an application having been filed and if filed, that the filing was not beyond the 30th day following issuance of the Certificate of Occupancy. Further, the City has initiated procedures to assure that even those taxpayers who are properly granted tax abatements are billed for real estate taxes payable for the period between the date of issuance of the Certificate of Occupancy and the last day of the calendar year before the commencement of the tax abatement.
[Emphasis added.]
Paragraph 2 provides, "as a result of [plaintiff's] claims" in "the Abatement Litigation" that certain cell towers were not on the tax rolls and that improper payments had been made to Sun Bank, "the City sought and obtained a return from Sun Bank of a portion of the fees challenged by [plaintiff] and put the cell towers on the tax rolls." (Emphasis added). As a result of the aforementioned actions and change in procedures, and the City's commitment for future enforcement, plaintiff agreed to dismiss the Abatement litigation.
With regard to the Inspection Fee issue, paragraph 4 provides:

*1063 4. After complaints were made by Porreca, but before the commencement of the Review and Inspection Fee Litigation, the City reviewed its business practices relating to the collection of escrow deposits for review and inspection fees and for the billing and collecting of all review and inspection fees. The City determined that some of the claims made by Porreca were well-founded in that the City was not collecting appropriate escrow deposits for the review and inspection fees, and was not billing and collecting the fees for City employees who performed review services in connection with real estate developments. After complaints were made by Porreca ... the City has modified its business practices. It has directed its personnel to calculate and collect escrow deposits for review and inspection fees and to bill and collect for the time and effort of City employees in doing [such] services. It is acknowledged by the parties that the City was billing and collecting fees for inspection services. Porreca and the City disagreed that the City was billing the correct amount.
[Emphasis added.]
As a result of the City's change in business practices and the City's commitment to obtain future escrows and bill and collect for in-house professional services for review and inspection, plaintiff agreed to dismiss the Inspection Fee litigation. In contrast to the Abatement litigation, the agreement is silent as to an identification of any action taken by the City after plaintiff filed the Inspection Fee litigation.
Paragraph 5 contains the release language that was the subject of the second part of the court's ruling. It states:
5. The City and Porreca do hereby remise and release the other, its or his respective agents, servants, employees, attorneys, heirs, administrators, successors or assigns of all claims for damages that were or could have been advanced by Porreca or the City against the other in the Abatement or the Review Inspection Fee Litigation.
[Emphasis added.]
According to the City's attorney, the initial draft of the agreement was prepared by plaintiff's counsel but there is no dispute the final agreement was the result of detailed negotiations between counsel with multiple revisions. At oral argument, plaintiff's counsel advised he drafted the release provision and intentionally chose the word "damages." Counsel for both parties agree attorney's fees were never discussed during their settlement negotiations.
On August 21, 2009, plaintiff filed a motion seeking a total of $60,131 in attorney's fees and $4,783.07 in costs relating to both the Abatement and the Inspection Fee litigation.[2] Plaintiff, relying on Henderson, supra, contended he was entitled to counsel fees as a prevailing party who obtained a prospective financial benefit for all the taxpayers in the City. He further contended the agreement expressly only released any claims he had to damages, but as it was silent on the issue of attorney's fees, he preserved his right to seek such fees.
The City argued in opposition that Henderson was inapplicable as plaintiff was not a prevailing party because everything was achieved before the litigation was commenced. The City also contended plaintiff had expended no money because he engaged the law firm on a contingency basis, the settlement agreement did not *1064 require the City to pay plaintiff any money, and plaintiff did not achieve any tangible result for which the fee agreement would apply.[3]
Following oral argument, the court denied plaintiff's motion, holding that none of the subsections of Rule 4:42-9 applied. Although the court recognized that plaintiff "makes conceivable arguments that there was a benefit to taxpayers as a result of [plaintiff's] bringing of this action," it nonetheless concluded there was no fund in court, R. 4:42-9(a)(2), finding Henderson to be "factually and substantively different" from this case. In so doing, the court found "the City essentially resolved all the issues on their own, most before the filing of the complaint, and perhaps some after" and there were "serious questions" regarding whether plaintiff was a prevailing party and whether there was "a cause and effect relationship between the filing of this lawsuit and the purported benefits to the municipality." The court further explained, "[t]his is not a class action where there is a recovery of a lump sum fund of money, and that's my understanding of the basis for the awarding of counsel fees in class action cases."
Additionally, the court concluded plaintiff had released any claims for attorney's fees, noting the provision in the agreement that "the parties desire to amicably resolve their differences without acknowledging any wrongdoing on the part of any party," with the understanding that a resolution of the disputes terminates the litigation. The court further commented that "I, as a lawyer or as a litigant, could not imagine signing this document and reserving in the back of my mind that I have an $80,000 attorney's fee claim." Referencing the language in paragraph 5, the court concluded that "for any potential recovery of attorney fees in a case like this, those attorney's fees have to be damages."

II.
Plaintiff argues the court erred in denying his request for attorney's fees based on its findings that Henderson is distinguishable and plaintiff was not a "prevailing party." Plaintiff contends the court's denial of his request for attorney's fees is subject to de novo review. See Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995) (holding that a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference"). The City, relying on Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44, 771 A.2d 1194 (2001), urges that determinations regarding attorney's fees should be disturbed only if there is a clear abuse of discretion.
Although generally courts have significant discretion in making determinations regarding attorney's fees, ibid., such determinations are not entitled to any special deference if the judge "misconceives the applicable law, or misapplies it to the factual complex ...." Kavanaugh v. Quigley, 63 N.J.Super. 153, 158, 164 A.2d 179 (App.Div.1960). See also Manalapan, supra, 140 N.J. at 378, 658 A.2d 1230. Thus, the judge's determination that Henderson *1065 is inapposite and his application of the prevailing party standard are subject to de novo review.
It is well established that under the American Rule, litigants generally are responsible for their own counsel fees unless otherwise authorized by statute, court rule or a contract. See e.g., Mason v. City of Hoboken, 196 N.J. 51, 70, 951 A.2d 1017 (2008); Satellite Gateway Commc'ns, Inc. v. Musi Dining Car Co., 110 N.J. 280, 284-85, 540 A.2d 1267 (1988). Here, plaintiff seeks an award of counsel fees under Rule 4:42-9(a)(2), which permits a court, in its discretion, to award attorney's fees from a fund in court.[4]
"Fund in court" is an equitable term of art. Henderson, supra, 176 N.J. at 564, 826 A.2d 615; Sarner v. Sarner, 38 N.J. 463, 467, 185 A.2d 851 (1962); Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168, 162 A.2d 834 (1960). The "fund in court" exception generally applies "when it would be unfair to saddle the full cost upon the litigant for the reason that the litigant is doing more than merely advancing his own interests." Henderson, supra, 176 N.J. at 554, 826 A.2d 615 (quoting Sunset Beach, supra, 33 N.J. at 168, 162 A.2d 834). Accordingly, "when litigants through court intercession create, protect or increase a fund for the benefit of a class of which they are members, in good conscience the cost of the proceedings should be visited in proper proportion upon all such assets." Sarner, supra, 38 N.J. at 469, 185 A.2d 851.
A "pot of money" or actual fund in the possession of the court is not required. Henderson, supra, 176 N.J. at 564, 826 A.2d 615; Sarner, supra, 38 N.J. at 467-68, 185 A.2d 851; Trimarco v. Trimarco, 396 N.J.Super. 207, 215, 933 A.2d 621 (App.Div.2007). "It is sufficient if, as a result of the litigation, the fund is brought under the control of the court." Trimarco, supra, 396 N.J.Super. at 215-16, 933 A.2d 621 (citation and quotation marks omitted). This exception is generally invoked when the litigation "produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation." Henderson, supra, 176 N.J. at 564, 826 A.2d 615.
A court has approved an award of counsel fees from a fund in court to taxpayer plaintiffs whose suit resulted in an indirect benefit to all Atlantic City taxpayers. Tabaac v. City of Atlantic City, 174 N.J.Super. 519, 537-38, 417 A.2d 56 (Law Div.1980). Courts have also invoked the exception to permit attorney fee awards in a shareholder's derivative action that confers pecuniary or non-pecuniary benefits upon the defendant. Sarner, supra, 38 N.J. at 467-69, 185 A.2d 851; Trimarco, supra, 396 N.J.Super. at 216-17, 933 A.2d 621. Additionally, the Court has treated an action as a class action solely for the purpose of awarding an attorney's fee under Rule 4:42-9(a)(2). See Henderson, supra, 176 N.J. at 564-66, 826 A.2d 615; Silverstein v. Shadow Lawn Sav. & Loan Ass'n, 51 N.J. 30, 45, 237 A.2d 474 (1968).
In Henderson, supra, a customer of the Camden County Municipal Utilities Authority ("CCMUA") filed a class action lawsuit challenging the imposition of compound interest on delinquent accounts. 176 N.J. at 558, 826 A.2d 615. Prior to class certification, the trial court dismissed *1066 plaintiff's complaint on summary judgment, we reversed on the substantive issue and remanded, and the Supreme Court granted certification. Ibid. The Court held the applicable statute only permitted the charge of simple interest and applied its decision directly to the plaintiff and prospectively to other CCMUA customers. Id. at 561-63, 826 A.2d 615. In light of the prospective ruling, there was no need to direct class certification. Id. at 566, 826 A.2d 615. Nonetheless, the Court concluded the plaintiff should be awarded reasonable attorney's fees directly from the CCMUA pursuant to the fund in court doctrine. Id. at 565-66, 826 A.2d 615. The Court explained that, as a consequence of its ruling, CCMUA customers no longer would be charged compound interest, thus "confer[ring] an economic benefit on a class of persons that did not contribute to the cost of the litigation." Id. at 565, 826 A.2d 615.
The Court found analogous its decision in Silverstein, supra, which had a similar procedure. There, the plaintiffs filed a putative class action lawsuit against their mortgagee contesting the method for computing interest, and prior to addressing certification of the class, summary judgment was granted to the defendant on the substantive issue. 51 N.J. at 32-33, 237 A.2d 474; see also Henderson, supra, 176 N.J. at 565, 826 A.2d 615. On direct certification, the Supreme Court reversed and ruled in the plaintiff's favor. Silverstein, supra, 51 N.J. at 33, 43-44, 237 A.2d 474; see also Henderson, supra, 176 N.J. at 565, 826 A.2d 615. The Court awarded the plaintiffs counsel fees under the fund in court doctrine as though the case were proceeding as a class action, reasoning that the defendant's other mortgagors would receive the benefit of the plaintiffs' litigation. Silverstein, supra, 51 N.J. at 45, 237 A.2d 474; see also Henderson, supra, 176 N.J. at 565, 826 A.2d 615.
Here, the trial court summarily found Henderson "factually and substantively" distinguishable without describing its holding or clearly identifying the basis for this conclusion. The court acknowledged plaintiff made "conceivable arguments that there was a benefit to taxpayers as a result of [his lawsuits]" and that "some" of the relief might have been obtained after the institution of litigation. The court, however, did not specifically identify the issues that were resolved post-litigation or discuss whether there was any resulting economic benefit to the City or its taxpayers. It appears the court found Henderson inapposite because the City pursued "significant actions" and made "changes" in response to plaintiff's complaints substantially prior to his filing of the lawsuits, raising "serious questions about whether or not the plaintiff is a prevailing party and whether or not there is a cause and effect relationship between the filing of [the litigation] and the purported benefits to the municipality." The court also appeared to focus on the fact that "[t]his [was] not a class action where there is a recovery of a lump sum fund of money...."
Based on our review of the record and applicable law, we are satisfied the court erred as a matter of law in its ruling in response to plaintiff's attorney's fee application. We view Rule 4:42-9(a)(2) as encompassing, in essence, a two-step process. First, the court must determine as a matter of law whether plaintiff is entitled to seek an attorney fee award under the fund in court exception as articulated in Henderson. If the court determines plaintiff has met the threshold, it then has the "discretion" to award the amount, if any, it concludes is a reasonable fee under the totality of the facts of the case. See R. 4:42-9(a)(2) (stating that a *1067 "court in its discretion may make an allowance out of such a fund ..."). As plaintiff's counsel acknowledged during oral argument on the motion, the court had "the discretion to say none of those fees were reasonable and [it's] not going to award anything." It appears the court here, in essence, conflated the steps and summarily concluded plaintiff did not even have an entitlement to seek an attorney's fee under Henderson because, in general, only limited relief was obtained as a result of his suits and there was no recovery of any lump sum fund of money from which to make the allowance.
The critical question in considering plaintiff's entitlement to request attorney's fees under this Rule is whether a fund in court was created as a result of his litigation. There need not be recovery of a lump sum fund of money; it is sufficient if the fund is the subject matter of the litigation and is thus brought under the control of the court. See, e.g., Trimarco, supra, 396 N.J.Super. at 215-16, 933 A.2d 621.
The applicable standard of the equitable "fund in court" exception is whether plaintiff "is doing more than merely advancing his own interests" and whether other persons have benefited from plaintiff's litigation rendering it "unfair to saddle the full cost" of advancing the suit on plaintiff. See, e.g., Henderson, supra, 176 N.J. at 564, 826 A.2d 615; Silverstein, supra, 51 N.J. at 45, 237 A.2d 474; Sarner, supra, 38 N.J. at 468-69, 185 A.2d 851. Though it noted that "some" issues were resolved after suit, the court did not specifically identify that relief. Instead it rendered the general conclusion that "the City essentially resolved all the issues on their own, most before the filing of the complaint." However, paragraph 2 of the settlement agreement expressly recognizes that plaintiff obtained specific relief as a result of instituting litigation against the City. That provision clearly identifies the following as the relief obtained "as a result" of claims raised in the Abatement litigation: 1) the return of a portion of the challenged fees paid to Sun Bank and 2) the placement of the cell towers on the tax rolls.[5] That relief, achieved through plaintiff's watchdog activities, conferred "a tangible economic benefit" on the City in the form of increased revenue, clearly "creat[ing], protect[ing] or increas[ing] a fund for the benefit" of the City's taxpayers. See Sarner, supra, 38 N.J. at 469, 185 A.2d 851. As such, there is a basis for the court to consider an award of fees related to that litigation under the fund in court doctrine.[6]
Furthermore, an award of fees from a fund in court is not dependent on plaintiff obtaining all the relief sought as a result of the suit. For example, the plaintiff in Henderson, supra, was awarded attorney's fees even though the Court did not grant the retroactive relief she requested. 176 N.J. at 558, 563, 565-66, 826 A.2d 615. To the extent plaintiff "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit[,]" plaintiff has obtained prevailing party status entitling it to seek an attorney fee award under Rule *1068 4:42-9(a)(2). See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983); accord Szczepanski v. Newcomb Med. Ctr., 141 N.J. 346, 355, 661 A.2d 1232 (1995).
Having determined plaintiff has a viable claim for attorney's fees pursuant to the fund in court exception of Rule 4:42-9(a)(2), we now address whether plaintiff waived such right pursuant to the settlement agreement. The parties expressly noted an intent to "amicably resolve their differences ... with the understanding that a resolution of these disputes terminates the actions...." In paragraph 5 plaintiff and the City "remise[d] and release[d] the other ... of all claims for damages that were or could have been advanced by [plaintiff] or the City against the other in the Abatement or the Review Inspection Fee Litigation." The judge made the personal observation that he "could not imagine signing this document and reserving in the back of my mind that I have [a substantial] attorney's fee claim" and concluded that "for any potential recovery of attorney fees in a case like this, those attorney's fees have to be damages." Accordingly, he found plaintiff released any claims for attorney's fees when he executed the settlement agreement.
It is undisputed the settlement agreement does not mention attorney's fees. Plaintiff relies on Torres v. Metropolitan Life Insurance Co., 189 F.3d 331 (3d Cir. 1999), arguing there is no waiver because of that silence. The City counters that Torres applies only to attorney fee requests under fee-shifting statutes and argues the release of all "claims for damages" encompasses attorney's fees. In Torres, the plaintiff sought an award of attorney's fees pursuant to the fee-shifting provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5(k), following settlement of his employment discrimination suit. Id. at 332. The settlement agreement provided for a monetary payment to plaintiff in settlement of all claims but contained no reference to attorney's fees. Id. at 333. The employer did not dispute that the plaintiff qualified as a prevailing party but argued the settlement agreement was a "global agreement" extinguishing all of the plaintiff's claims against it, including a claim for attorney's fees. Ibid. The federal court concluded that the general release in the settlement agreement did not preclude an award of attorney's fees. Id. at 333-35. In so doing, it followed a series of Third Circuit cases involving claims for statutory attorney's fees and establishing the rule that a prevailing party's claim for such fees will survive unless "specifically and expressly" waived in the settlement agreement and rejecting the "silence equals waiver" rule. Ibid. As noted in Torres, such a bright-line rule established uniformity of decision, furthered the policy expressed by the Supreme Court that prevailing plaintiffs are presumptively entitled to recover attorney's fees as authorized by statute, see id. at 334, and appropriately placed the burden on the losing party to insist that an express waiver of such fees be inserted in the settlement agreement in order to foreclose such claim, see id. at 333.
In Warrington v. Village Supermarket, Inc., 328 N.J.Super. 410, 417, 746 A.2d 61 (App.Div.2000), the plaintiff founded her right to relief under state law, the Law Against Discrimination, and federal law, the Americans with Disabilities Act, both of which allow attorney's fees to the prevailing party. N.J.S.A. 10:5-27.1; 42 U.S.C.A. § 12205. The consent judgment was silent as to attorney's fees. Ibid. As the plaintiff's request for attorney's fees was premised on a federal statute with fee-shifting provisions, we applied the Third Circuit's bright-line rule, limiting the inquiry *1069 to whether the agreement expressly stipulates that the claim is waived, and thus concluded there was no waiver. Id. at 417-19, 746 A.2d 61.
It is clear the parties' settlement agreement does not expressly extinguish all claims to attorney's fees. The parties have not cited and we have not located any case in this State applying the federal bright-line rule to a counsel fee request not premised on a fee-shifting statute. As the law on this issue is far from settled, and is essentially non-existent, the parties would not have had an expectation that plaintiff's attorney fee claim would survive unless expressly and specifically waived and that extrinsic evidence would be irrelevant to the inquiry. Moreover, the instant case does not involve the fundamental policy consideration underlying the Third Circuit's bright-line rule, i.e., the prevailing party's presumptive entitlement to recover statutory attorney's fees. Accordingly, we do not discern a basis to engraft on this settlement agreement the bright-line federal rule.
We thus consider basic contract principles to determine the meaning of the parties' release. "If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238, 948 A.2d 1285 (2008). Having found an ambiguity, "a court may look to extrinsic evidence as an aid to interpretation[.]" Ibid.
Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 269, 901 A.2d 341 (2006) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301-02, 96 A.2d 652 (1953)). The Supreme Court elaborated:
This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety, and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance....
[Ibid.]
The settlement agreement is far from crystal clear. Such ambiguity lends itself to the consideration of extrinsic evidence of the course of negotiations or the expectations of the parties. As noted by the judge, the preliminary "whereas" clause expresses the parties' "desire to amicably resolve their differences" and the "understanding that a resolution of [their] disputes terminates the actions." As previously stated, as plaintiff did not have an automatic entitlement to attorney's fees, the City would not have had an expectation that plaintiff would have sought the same after the parties signed the extensively-negotiated settlement agreement.
Arguably, as asserted by the City in response to plaintiff's motion, paragraph 5 of the settlement agreement was a reciprocal general release relating to "claims" that could have been asserted by either party against the other related to the two lawsuits. As the City noted, plaintiff had sought counsel fees as a relief in both complaints, and thus by releasing all claims related to either action, plaintiff was presumably releasing any claims to counsel fees.
Plaintiff, however, focuses on the phrase "claims for damages," which it intentionally placed in the agreement, arguing that *1070 damages are distinct from counsel fees. This case does not involve tortious conduct or breach of contract in which attorney's fees are a traditional element of damages. See Pressler & Verniero, Current N.J. Court Rules, comment 2.9 on R. 4:42-9 (2011). On the other hand, damages are generally monetary. See Black's Law Dictionary, 416 (8th ed.2004) (defining damages as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). Here neither party was seeking monetary damagesin both suits plaintiff sought relief in the nature of mandamus. In fact, the court's April 22, 2008 order expressly prohibited the Inspection Fee complaint from seeking damages against the City. The City did not assert a counterclaim. See also Harvey v. Twp. of Deptford, 402 N.J.Super. 156, 165, 952 A.2d 1150 (App.Div.) (recognizing claim for monetary damages is precluded in an action in lieu of prerogative writs absent constitutional or statutory authority for such liability), certif. denied, 197 N.J. 16, 960 A.2d 746 (2008).
It is therefore arguable that the parties' release of their respective "claims for damages" was meaningless if it were not intended to apply to attorney's fees. "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." Hardy ex. rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103, 965 A.2d 1165 (2009). A contract "should not be interpreted to render one of its terms meaningless." Cumberland County Improvement Auth. v. GSP Recycling Co. Inc., 358 N.J.Super. 484, 497, 818 A.2d 481 (App. Div.), certif. denied, 177 N.J. 222, 827 A.2d 289 (2003). "Literalism must give way to context." Ibid. (quoting Borough of Princeton v. Bd. of Chosen Freeholders of County of Mercer, 333 N.J.Super. 310, 325, 755 A.2d 637 (App.Div.2000), aff'd, 169 N.J. 135, 777 A.2d 19 (2001)).
The City's counsel certified in opposition to plaintiff's motion that "[a]t no time during the negotiations leading to the execution of the Agreement of Settlement did plaintiff's counsel ever indicate he was seeking counsel fees or costs." He further represented that had the City been informed plaintiff was seeking approximately $65,000 in counsel fees and costs to "settle" the case, "it certainly would have impacted the [City's] decision ... to settle the case or move forward with the trial." He further claimed it was "incomprehensible" that "plaintiff could have pursued settlement discussions with the defendant, initiated the discussions by presenting a Settlement Agreement to the defendant, never mention the concept of counsel fees or costs in any settlement discussions, generally release the defendant from claims which could have been asserted in either litigation," and then file a motion for counsel fees after he received the signed settlement agreement and Stipulation of Dismissal.
In hindsight it would have been preferable for the City to have acted defensively and made clear during negotiations that it was entering into a global settlement with no loose ends. Plaintiff, however, was in a better position to be up front about his intention to pursue a discretionary attorney fee claim. We are troubled by the strategy employed by plaintiff's attorney. He was intentionally silent about the counsel fee issue, holding back a material term for a substantial claim, apparently lying in wait for the City to sign the agreement, and springing the claim after the fact. Plaintiff's attorney's behavior, "certainly calculated to work an advantage ... based on information that was uniquely his ... [is] a course of conduct that we neither applaud nor encourage." See Brundage v. *1071 Estate of Carl V. Carambio, 195 N.J. 575, 582, 951 A.2d 947 (2008). This apparent lack of candor is particularly troubling in a suit where the counsel fee is to be borne by taxpayers.
We remand to the trial court to conduct whatever proceedings it deems necessary to address the waiver issue and plaintiff's application for counsel fees consistent with our opinion. We do not retain jurisdiction.
NOTES
[1] N.J.S.A. 2A:15-18, Action by taxpayer on failure of county or municipality to sue, provides:

If ... the governing body of a municipality fails to prosecute a claim or demand of the county or municipality, any court in which an action on such claim or demand is cognizable may, upon terms, allow a taxpayer and resident of the . .. municipality to commence and prosecute an action upon the claim or demand in the name and on behalf of the ... municipality, if in the opinion of the court the interests of the ... municipality would be promoted thereby.
[2] The City also filed a cross-motion seeking attorney's fees and costs for defending the motion, which was denied by the court and is not at issue in this appeal.
[3] The retainer agreement is not part of the appellate record, it is not referenced in the briefs, and no arguments have been advanced by either party on appeal regarding the issue of the effect of a contingent retainer agreement on a counsel fee application. See Specialized Med. Sys., Inc. v. Lemmerling, 252 N.J.Super. 180, 187, 599 A.2d 578 (App.Div. 1991) (holding "that a prevailing party can collect reasonable counsel fees even though he is not otherwise obligated to pay them to his counsel, at least if the attorney and client understand their retainer agreement to so permit"), certif. granted, 127 N.J. 565, 606 A.2d 375 (1992), appeal dismissed, 142 N.J. 443, 663 A.2d 1352 (1992).
[4] Rule 4:42-9 states in relevant part:

(a) Actions in Which Fee is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except
....
(2) Out of a fund in court. The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury....
[5] At oral argument before us, the City's attorney urged that the reference to the cell towers was in error, noting the assessor's deposition testimony that he "put the cell towers on the tax books for 2007." In view of our remand, we take no position as to the City's ability to challenge this unambiguous provision.
[6] In contrast, paragraph 4 of the settlement agreement does not include any statement that action was taken "as a result" of the Inspection Fee litigation. As the judge did not delineate between the two suits in his holding, and in view of our remand, we will defer to the trial court to determine whether a fund in court existed as a result of the Inspection Fee litigation.