**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1576-22
      A-1577-22

IN THE MATTER OF THE
ESTATE OF JOHN J.
MOONEY, deceased.

_____

CLAIRE J. MOONEY, by and
through her guardian, JOHN
A. CONTE, Jr.,

  Plaintiff-Respondent,

v.

ELIZABETH CONVERY,

  Defendant-Respondent.

_____

MARY STACHOWIAK,

  Appellant.

_____

Submitted October 23, 2024 – Decided November 13, 2024

Before Judges Mayer and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket Nos. P-000407-20 and C-000178-20.

Hellring Lindeman Goldstein & Siegal LLP, attorneys for appellant Mary Stachowiak (Sheryl E. Koomer and Corrine B. Maloney, on the briefs).

Meyerson, Fox & Conte, PA, attorneys for respondent John A. Conte, Jr. (Erik Topp, on the briefs).

Helen C. Dodick, Acting Public Guardian, attorneys for respondent John D. Mooney, Office of the Public Guardian (Jonathan A. Pfoutz, on the statements in lieu of brief).

PER CURIAM

In these appeals, calendared back-to-back and consolidated for purposes of this opinion, appellant Mary Stachowiak appeals from an October 28, 2022 order awarding legal fees and costs incurred in obtaining a July 8, 2022 judgment in favor of Claire J. Mooney, individually and as beneficiary of the Estate of John J. Mooney (Estate), against Elizabeth Convery.[1] In the October 28, 2022 order, the judge awarded the sum of $221,255.65, representing legal fees and costs for services provided by the law firm of Hellring Lindeman Goldstein & Siegal, LLP (Hellring firm), and the sum of

---

[1] Because several individuals share the same last name, we refer to them by their first names. No disrespect is intended.

$46,479.50, representing accounting fees and costs for services provided by Wiss & Company (Wiss) in representing Mary. However, the October 28, 2022 order directed the payment of the awarded fees and costs after Elizabeth's payment of the full judgment amount in favor of Claire and the Estate rather than from a fund in court per Rule 4:42-9(a)(2). Mary also appeals from a December 16, 2022 order denying her motion for reconsideration of the October 28, 2022 order.[2]

For the reasons that follow, we reverse and remand the portion of the October 28, 2022 order requiring payment of Mary's legal fees, accountant's fees, and costs to be paid by Elizabeth rather than a fund in court under Rule 4:42-9(a)(2). However, we affirm the amount of the ordered fees and costs for work done by the Hellring firm and Wiss. Based on our decision reversing and remanding a portion of the October 28, 2022 order, we reverse the December 16, 2022 order denying reconsideration.

---

[2] Mary also purports to appeal from a footnote in the judge's written decision issued with the July 8, 2022 order declining to reinstate her as the Estate's executrix. The removal of Mary and Elizabeth as co-executrixes for the Estate was the subject of a December 4, 2020 order. The December 4, 2020 order appointed David M. Repetto, Esquire to serve as the temporary administrator of the Estate and temporary trustee of a trust created for Claire's benefit. Repetto served in those capacities throughout the litigations.

A-1576-22

We recite the facts from the trial before the probate court judge. John J. Mooney (decedent)[3] and Claire J. Mooney (collectively, the Mooneys) were married and had five children who survived into adulthood.[4]

Decedent's will named Elizabeth and Mary as co-executrixes of the Estate. Decedent's will also designated Elizabeth and Mary as co-trustees of a testamentary trust (Trust) created for Claire's benefit. The Mooneys also granted powers of attorney to Elizabeth and Mary.

Because she suspected Elizabeth improperly withdrew funds belonging to the Estate and Claire, Mary filed two separate actions: a probate action on behalf of the Estate, Docket No. P-407-20, and a chancery action on behalf of Claire, Docket No. C-178-20. Mary filed a verified complaint and an order to show cause (OTSC) in each action. The matters were not consolidated. However, the same judge handled both actions and presided over the eventual bench trial.

---

[3] John J. Mooney died on June 16, 2020. A few months prior to his death, decedent was adjudicated an incapacitated person and Elizabeth was appointed as his legal guardian.

[4] The children are Mary, Elizabeth, Johnny, Kathleen, and Noreen. Johnny was adjudicated an incapacitated person. Noreen passed away in September 2021.

A-1576-22

On October 7, 2020, the judge entered an order appointing respondent John A. Conte, Jr., Esquire as Claire's guardian ad litem and Daniel J. Jurkovic, Esquire as Johnny's guardian ad litem.

Just before Thanksgiving 2020, Elizabeth filed responsive pleadings in both actions. The Bergen County Surrogate's Office (Surrogate's Office) ordered Mary serve the complaints, OTSC, and responsive pleadings by regular and certified mail on all interested parties, including the Mooneys' grandchildren. As a result, Mary's counsel bore the significant costs associated with photocopying and mailing fifty sets of pleadings.[5]

Due to the extended Thanksgiving holiday weekend, the Hellring firm lacked office staff to photocopy fifty sets of voluminous pleadings. To meet the deadline imposed by the Surrogate's Office, the Hellring firm engaged an outside company to duplicate the pleadings. The cost of photocopying was $3,846.32. The cost of mailing the pleadings to all interested parties was $595.55.

In a December 4, 2020 order, the judge revoked the powers of attorney that allowed Mary or Elizabeth to make decisions on Claire's behalf. As of December 4, the judge ordered Conte to make all healthcare decisions for

---

[5] Each set of the pleadings contained 6,353 pages.

Claire. He also ordered Repetto to act as the Estate's administrator and trustee of the Trust.

Around the time of the litigations, Claire, age eighty-six, suffered from dementia. Before trial, Conte filed a guardianship action to have Claire adjudicated as an incapacitated person and designate him as the guardian of Claire's person and property. The judge granted Conte's guardianship application on February 26, 2021. Additionally, between December 2020 and April 2021, with Conte's approval, Mary advanced $18,638.01 of her own money to pay some of her mother's expenses because Conte was unable to access Claire's funds.

The judge conducted a three-day bench trial. At trial, Lawrence Chodor, an accounting expert with Wiss, testified regarding the Mooneys' financial accounts. Chodor explained how Elizabeth improperly accessed her parents' accounts to make cash withdrawals, write checks to herself and her family members, and pay her personal bills and expenses. Chodor also discussed credit card payments, Amazon purchases, automobile expenses, mortgage payments, and other fees paid by the Mooneys on behalf of Elizabeth and her family.

6

Relying on Chodor's testimony, the judge found Elizabeth improperly exercised undue influence over her parents, resulting in Elizabeth taking $684,578.02 of her parents' money for herself and her family. Consequently, the judge entered a July 8, 2022 judgment in favor of Claire and the Estate and against Elizabeth in that amount. In a July 8, 2022 written statement of reasons, the judge explained it was not "in the best interest of [Claire]" to reinstate Mary as the Estate's executrix or trustee of the Trust. The judge noted Repetto "acted appropriately throughout [the litigations] and there [was] no reason to cause further disagreement between and among the Mooney family members." Nothing in the July 8, 2022 judgment altered Repetto's continued representation of the Estate and Trust.

The judge advised that a determination regarding the payment of fees and costs incurred in the litigations would be addressed after the parties filed supplemental information. However, he expressed "concern[] about the impact of any such [fee] award on the amounts available for the future care of [Claire]." Due to this concern, the judge requested input on the fee issue from all parties, including Conte and Repetto. He also stated he would "advise if oral argument [would] be held."

7

A few weeks after entry of the July 8, 2022 judgment, the Hellring firm submitted a certification of services seeking fees and costs associated with lawsuits filed for the benefit of the Estate and Claire. Sheryl E. Koomer, Esquire of the Hellring firm requested reimbursement for 273.30 hours of legal work at an hourly rate of $460. Corinne B. Maloney, Esquire of the Hellring firm requested reimbursement for 239.45 hours of legal work at an hourly rate of $425 per hour. In total, the Hellring firm requested $227,484.25, representing legal fees incurred from July 15, 2020 through May 18, 2022. The Hellring firm also requested costs for the same time period in the amount of $15,348.27. Additionally, Mary sought reimbursement for accountant services provided by Wiss, specifically Chodor's fees and costs associated with the litigations, in the amount of $46,479.50.

Elizabeth and Jurkovic opposed Mary's application for fees and costs. Conte and Repetto did not file opposition.

On August 2, 2022, prior to the judge's disposition of Mary's motion for fees and costs, Elizabeth's attorney informed Conte that Elizabeth lacked funds to pay the judgment amount. Jurkovic, on Johnny's behalf, sent a letter to the judge advising "it appear[ed] there [would] be no recovery of actual funds under the judgment." Under the circumstances, Jurkovic suggested the

judge not order Mary's fees and costs be paid from a fund in court as allowed under Rule 4:42-9(a)(2).

On October 28, 2022, without conducting oral argument, the judge determined Mary was entitled to recover fees and costs, but the fees and costs should be paid by Elizabeth and not the Estate. The judge issued an October 28, 2022 written statement of reasons in support of his awarded fees and costs. In an October 28, 2022 order, the judge awarded the Hellring firm a total of $221,255.65, including legal fees and costs, and $46,479.50 in expert accounting fees to Wiss.

Mary filed a motion for reconsideration. In support of her motion, Mary certified that her parents wanted Claire to remain in her own home and be cared for if Claire was unable to care for herself. Further, Mary certified she would take all action necessary to ensure her mother remained in her own home with appropriate care. She also requested oral argument on the reconsideration motion. The judge did not conduct oral argument.

While the judge concluded Mary successfully created a fund in court as a result of prevailing in the litigations, he declined to award fees payable from the fund in court under Rule 4:49-2(a)(2). The judge explained that depletion of the fund in court by payment of Mary's awarded fees and costs might

9

impact the ability to pay for Claire's future care. The judge stated the Estate was required to be fully reimbursed by Elizabeth before Mary collected any awarded fees and costs. In a December 16, 2022 order, the judge denied Mary's reconsideration motion.

On appeal, Mary challenges the October 28, 2022 order requiring the payment of her fees and costs only after the Estate and Claire received payment of the awarded judgment, in full, from Elizabeth. She also appeals from the judge deciding her fee and cost application and reconsideration motion without conducting oral argument. Additionally, Mary challenges the denial of her request to be reappointed as the Estate's executrix and trustee of the Trust.

We first consider Mary's argument that the judge erred in deciding she could not collect the awarded fees and costs from a fund in court until the entire judgment was recovered by Claire and the Estate. We agree.

Because he was concerned that payment of Mary's awarded fees and costs might result in "potentially depriving resources from [the] Estate for [Claire]'s care and maintenance," the judge ordered all funds toward the judgment to be paid to the Estate first, and only after the recovery of the full

10

amount of the judgment, plus interest, should any fees and costs be paid to Mary.

In his statement of reasons denying reconsideration, the judge stated:

> The argument that [Mary] should be allowed to collect legal fees from [Elizabeth] before [Claire] and the Estate are made whole . . . is contrary to [Mary's] professed intent to protect [Claire]. Collection of the Judgment will make [Claire] whole. It is unseemly and unnecessary that [Mary] compete with [Claire] to collect potential limited monies from [Elizabeth]. As such, the court, as a matter of equity, concludes that the Judgment in favor of [Claire] and the Estate be paid first. If [Mary] collects any funds from [Elizabeth] prior to full payment of the Judgment, such funds are to be used to care for [Claire]. There will be more than sufficient time for [Mary] to collect the legal fees and costs from [Elizabeth] after the Judgment is fully paid by [Elizabeth].

New Jersey courts follow the American Rule, requiring all parties pay their own counsel fees. However, there are a few exceptions to this rule, including recovery of counsel fees and costs associated with probate actions. In re Farnkopf, 363 N.J. Super. 382, 395 (App. Div. 2003). Rule 4:42-9(a)(2) permits the court, in its discretion, to award counsel fees in probate actions to be paid out of a fund in court. When an executor or trustee commits the "pernicious tort" of undue influence, reasonable counsel fees and costs should

be awarded to the prevailing party. In re Niles Trust, 176 N.J. 282, 296-300 (2003).

"[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Substantial deference is accorded a trial court's fee award in a probate action. See In re Prob. of Alleged Will of Hughes, 244 N.J. Super. 322, 328 (App. Div. 1990). In awarding fees, the court has "broad discretion," but not "unbridled discretion." In re Clark, 212 N.J. Super. 408, 416 (Ch. Div. 1986).

Mary contends it was inequitable for the judge to conclude she could not recover any awarded fees and costs until Elizabeth fully paid the judgment in favor of Claire and the Estate. Mary further asserts there is no case law supporting the judge's decision.

According to Mary, the judge's decision required her to pursue Elizabeth, at Mary's sole expense, before she could hope to collect the awarded fees and costs. Mary argues the judge cited the potential financial impact on the availability of funds to pay for Claire's future care in declining to order payment of Mary's fees and costs from a fund in court. Mary claims

the judge disregarded her certification stating she would take all necessary action to ensure Claire would be cared for in her own home as her parents wished. Further, Mary asserts the judge overlooked the fact that Mary advanced her own personal money to pay Claire's expenses when Conte was unable to gain access to Claire's funds.

Based on our review of the record, we are satisfied the judge abused his discretion in declining to allow Mary to collect the awarded fees and costs until after the Estate and Claire were made whole. Nothing in the record substantiated a potential impact on Claire's future care if Mary's awarded fees and costs were paid from a fund in court. Nor is there any evidence in the record reflecting the amount of money presently held by the Estate and the Trust. Additionally, the record is devoid of any findings regarding the annual costs associated with Claire's future care.

Here, there is no evidence in the record supporting the judge's concern that the payment of fees and costs awarded to Mary from a fund in court might negatively impact the ability to pay for Claire's future care. Consequently, we remand to the trial court to render fact findings relevant to the resources available for Claire's future care, including but not limited to the following issues: the amount of the funds presently held by the Estate and the Trust; the

13

annual cost of Claire's future care; and whether the payment of Mary's awarded fees and costs from a fund in court would negatively impact Claire's future care.

We next consider Mary's argument that the judge abused his discretion in declining payment of her awarded fees and costs from a fund in court.

Rule 4:42-9(a)(2) permits fees in probate matters to be paid out of a fund in court. A fund in court applies "when it would be unfair to saddle the full

cost . . . upon the litigant for the reason that the litigant is doing more than merely advancing his own interests." Henderson v. Camden Cnty. Mun. Util. Auth., 176 N.J. 554, 564 (2003) (quoting Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168 (1960)). "[W]hen litigants through court intercession create, protect or increase a fund for the benefit of a class of which they are members, in good conscience the cost of the proceedings should be visited in proper proportion upon all such assets." Sarner v. Sarner, 38 N.J. 463, 469 (1962). "The term 'fund in court' is one of art." Id. at 467. A fund in court applies where a party's "actions have created, preserved or increased property to the benefit of a class of which he [or she] is a member." Ibid.

As we stated in Porreca v. City of Millville:

We view Rule 4:42-9(a)(2) as encompassing, in essence, a two-step process. First, the court must determine as a matter of law whether plaintiff is entitled to seek an attorney fee award under the fund in court exception as articulated in Henderson. If the court determines plaintiff has met the threshold, it then has the "discretion" to award the amount, if any, it concludes is a reasonable fee under the totality of the facts of the case. See R. 4:42-9(a)(2) (stating that a "court in its discretion may make an allowance out of such a fund . . .").

[419 N.J. Super. 212, 227-28 (App. Div. 2011).]

Here, the judge determined Mary satisfied Henderson because she litigated the matters for the benefit of all beneficiaries of the Estate, including Claire. The judge found Mary litigated the probate and chancery actions to recoup assets wrongfully taken by Elizabeth from the Estate and Claire and to protect against Elizabeth's continued depletion of the remaining assets held by the Estate and the Trust.

Because Mary met her burden under Henderson, the judge was required to perform the analysis set forth in Porreca. His discretion was limited to an award, if any, of fees and costs that he concluded were reasonable. The judge did not have the discretion to direct payment of the judgment in full before Mary could recover her fees and costs absent evidence that payment of the awarded fees and costs impacted Claire's future care.

15

We next consider Mary's argument that the judge abused his discretion in reducing the amount of the fees and costs awarded. We disagree except as to overlooking the fees requested for the Hellring firm's deposition-related services on August 3, 2021 and denying reimbursement of photocopying and mailing costs incurred when Mary served the initial pleadings on all interested parties as directed by the Surrogate's Office.

The parties submitted documentation and certifications in support of, and in opposition to, the requested fees and costs. The judge undertook a thorough analysis of the certifications provided by the Hellring firm. The judge concluded the hourly rates requested by the Hellring firm attorneys were reasonable. However, as part of his detailed analysis, the judge found many of the billings for legal services were duplicative, excessive, or involved administrative matters. The judge noted more than one attorney frequently performed the same or similar tasks. He also found attorneys took a longer than reasonable amount of time to complete certain tasks.

Based on his comprehensive review, the judge determined the duplicate, excessive, and unnecessary administrative billings totaled $63,614.50, or approximately twenty-eight percent of the total requested counsel fee amount.

Thus, the judge reduced fees requested by the Hellring firm by $63,614.50 to arrive at a fee award of $163,869.75.

Additionally, the judge disallowed certain requested costs, including $595.55 for postage and $3,846.32 for photocopies. The judge found the Hellring firm failed to provide sufficient support for these costs. As a result, the judge reduced the amount of costs awarded by $4,441.87, or approximately twenty-nine percent, to $10,906.40.

Regarding the fees and costs for the services provided by Wiss, the judge allowed the entire amount requested because Chodor's testimony was pivotal to the judge's finding Elizabeth improperly depleted the Estate. He awarded Mary $46,479.50 as reimbursement for Chodor's fees associated with his accounting testimony in the litigations.

The factors to be considered by a court in awarding attorney's fees are discussed in Rendine v. Pantzer, 141 N.J. at 334-35. Among the factors in awarding attorney's fees is the amount of the lodestar, which is the appropriate hourly fee multiplied by the number of hours reasonably expended. Ibid. Hours that are "excessive, redundant, or otherwise unnecessary" are to be excluded. Id. at 335.

As the Court stated in Rendine:

[T]he trial court's determination of the lodestar amount is the most significant element in the award of a reasonable fee because that function requires the trial court to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application. Trial court[]s should not accept passively the submissions of counsel to support the lodestar amount:

> Compiling raw totals of hours spent, however, does not complete the inquiry. It does not follow that the amount of time <u>actually</u> expended is the amount of time <u>reasonably</u> expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's <u>client</u> also are not properly billed to one's <u>adversary</u> pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.
>
> [<u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980).]

[<u>Ibid.</u> (citation reformatted).]

Rule of Professional Conduct (RPC) 1.5(a)(1)-(4) provides the following additional factors to be considered in determining the reasonableness of an attorney fee: the time and labor required; the novelty

18

and difficulty of the questions involved; the skill requisite to perform the legal service properly; whether acceptance of the employment precluded other employment by the lawyer; the fee customarily charged in the locality for similar legal services; and the amount involved and the results obtained.

We discern no abuse of the judge's discretion in determining the Hellring firm unnecessarily assigned multiple attorneys to complete various legal tasks. Although the judge allowed billing by more than one Hellring firm attorney for some tasks, we are satisfied the judge properly exercised his discretion in determining certain tasks required only one attorney.

Nor did the judge abuse his discretion in concluding certain billing entries from the Hellring firm were excessive, duplicative, or administrative. The judge rendered detailed findings in support of his reduction of fees requested by the Hellring firm. Because we discern no manifest abuse of discretion in the judge's reductions in the hours expended by various individuals at the Hellring firm as duplicative, excessive, or administrative, we decline to disturb the amount of the awarded fees.

However, based on our review of the record, it appears the judge overlooked time billed by the Hellring firm for preparing for and taking a deposition on August 3, 2021. According to the record, an attorney with the

Hellring firm attended a deposition lasting more than five hours on that date. However, the judge did not award any fees associated with this deposition. Thus, we remand the issue for the judge to address the omission.

Mary also challenges the judge's rejection of her request to recover certain photocopying and mailing expenses. The Surrogate's Office required Mary serve the substantial pretrial submissions on all interested parties by a specific date. That date coincided with the extended Thanksgiving holiday weekend. Because the Hellring firm lacked staff to photocopy and prepare the voluminous submissions that weekend, counsel incurred significant photocopying and mailing charges to meet the deadline.

The judge requested Mary provide a detailed billing invoice associated with the photocopy and postage charges, and she did so. The judge found the Hellring firm failed to provide sufficient support for those expenses.

On her motion for reconsideration, Mary provided receipts related to the photocopy and postage charges. However, the judge overlooked these costs in his statement of reasons on reconsideration.

Rule 4:42-8 permits reasonable costs to be awarded to prevailing parties. Because the Surrogate's Office specified a date for mailing the pretrial submissions to all interested parties, which coincided with the long

20

holiday weekend, we are satisfied the costs associated with the photocopies and postage were reasonable and the judge abused his discretion by failing to reimburse these costs.

In summary, we affirm the judge's rejection of certain costs and fees associated with the Hellring firm's legal services as duplicative, excessive, or administrative. However, on the issue of fees associated with the Hellring firm attending a five-hour deposition on August 3, 2021, we remand the issue for the judge to award reasonable fees associated with this task. Additionally, regarding the costs associated with the photocopying and mailing of pretrial submissions to all interested parties as ordered by the Surrogate's Office, we reverse the judge's denial of reimbursement for those expenses.

Because we are remanding the issue of whether Mary may be paid out of a fund in court, we direct the judge to correct the omission regarding reimbursement for fees associated with the deposition on August 3, 2021 and disallowing recovery of costs associated with photocopying and mailing the pretrial submissions to all interested parties.

We next address Mary's argument that the judge abused his discretion in declining to conduct oral argument on the original fee application and her motion for reconsideration. Under Rules 1:6-2(d) and 5:5-4(a)(1), oral

21

argument should be granted unless the matter involves pretrial discovery or is directly addressed to the calendar. Oral argument should be granted when "significant substantive issues are raised and argument is requested." Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div. 2010) (quoting Mackowski v. Mackowski, 317 N.J. Super. 8, 14 (App. Div. 1998)). Denial of oral argument when a motion presents a substantive issue "deprives litigants of an opportunity to present their case fully to a court." Ibid. (quoting Mackowski, 317 N.J. Super. at 14).

Mary contends she was entitled to oral argument on her application. While there is no evidence in the record that Mary requested oral argument on her initial request for fees and costs, Mary requested oral argument on her reconsideration motion. The judge never articulated reasons for denying Mary's request for oral argument on the reconsideration motion. Additionally, if the judge had granted oral argument, Mary would have had an opportunity to address the judge's concerns.

We next address Mary's argument that the judge erred in declining to reinstate her as the Estate's executrix and trustee of the Trust. First, neither the July 8, 2022 judgment nor the October 28, 2022 order referred to a request by Mary to be reinstated in these fiduciary roles. Rather, in a footnote to his

22

written statement of reasons in support of the July 8, 2022 judgment, the judge found it was not in Claire's best interest to reinstate Mary as executrix of the Estate or trustee of the Trust to avoid "further disagreement between and among the Mooney family members."

We review orders on appeal, not a judge's legal reasoning. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 169 (App. Div. 2005). Nothing in the July 8, 2022 judgment or the October 28, 2022 order addressed Mary's request to be reinstated to her prior fiduciary positions. Thus, we decline to address the issue.

However, even if we considered Mary's argument on this issue, a judicial decision against reinstating her as the Estate's executrix or the Trust's trustee would not amount to an abuse of discretion. When the judge awarded fees and costs in his October 28, 2022 order, Mary became a creditor of the Estate. However, Mary was also a beneficiary of the Estate. Because of Mary's dual roles—creditor and beneficiary—her interests would have conflicted with the interests of the Estate's other beneficiaries.

In sum, we remand for a determination as to the Estate's assets, the costs and expenses associated with Claire's future care, and whether the Estate has sufficient funds to pay Mary's fees and costs from a fund in court prior to

23

Elizabeth's satisfaction of the entire judgment in favor of Claire and the Estate.  In addition, we affirm the judge's award of fees, but remand for the judge to correct the omission to consider the Hellring firm's August 3, 2021 billing entry.  Further, we reverse and remand for the judge to award costs associated with the photocopying and mailing of the pretrial submissions to all interested parties.

Affirmed in part, remanded in part, and reversed in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1576-22