**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2458-23

IQBAL HUSAEEN, AK
CONSTRUCTION, and IR
CORPORATION, INC., d/b/a
IR CONSTRUCTION,

      Plaintiffs-Appellants/
      Cross-Respondents,

and

MUBARAK AHMED,
MOHAMMED A. RAHIM,
MUHAMMAD MAIN UDDIN,
MOHAMMED MAHBUBUR
RAHMAN, and MOHAMMED
MAIN UDDIN,

      Plaintiffs,

v.

MUSLIM UMMAH TRUST, INC.,
d/b/a MASJID AL-HERA,

      Defendant-Respondent/
      Cross-Appellant,

and

MOHAMMED EMDADUL HOQUE, MD ZIAUL ISLAM, MOHAMMED JASHIM UDDIN, MOHAMMED OBYED CHOWDHURY, MOHAMMED ELIAS, KAZI ELIAS, NASIR UDDIN, ABUL KALAM AZAD, and MUHAMMAD R. AMIN,

     Defendants.

_____

Submitted April 3, 2025 – Decided May 7, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3182-19.

George N. Polis, attorney for appellants.

Soliman & Associates, PC, attorneys for respondents (Ahmed M. Soliman, on the brief).

PER CURIAM

This appeal, which returns to us after our remand, involves ongoing disputes related to the organization, governance, and business practices of a mosque and religious school in Atlantic City owned and operated by defendant Muslim Ummah Trust, Inc., d/b/a Masjid Al-Hera (MUT) and its board of directors. The parties represent two factions of the organization who are competing for control and frequently seek judicial intervention to resolve their

disputes. Plaintiff Iqbal Husaeen and certain plaintiffs not participating in this appeal were founding members of the mosque and comprised the initial board of directors. The defendants not participating in this appeal voted to remove the initial board of directors and now control the mosque.[1]

Husaeen is the principal and sole owner of plaintiffs IRC and AKC. Husaeen alleged he and his companies cumulatively loaned MUT $289,751.46, broken down as follows: $239,283.81 from IRC; $33,843.65 from Husaeen personally; and $16,624 from AKC to renovate and operate the mosque. The judge denied the requested repayment with respect to these loans but ordered the defendants in that matter to "make a payment of $7,500[] . . . into a trust account to be managed by [the Husaeen Plaintiffs] . . . to satisfy any litigation costs incurred by the litigants." (alteration in original). We previously remanded, concluding the prior judge erred in denying plaintiffs' loan-related claims under the Entire Controversy Doctrine (ECD) and failed to articulate the legal and factual bases for imposing the $7,500 payment. See generally Husaeen v. Muslim Ummah Tr., No. A-1619-20 (App. Div. July 1, 2022).

---

[1] Certain plaintiffs and defendants identified in the caption have not participated in this appeal because, following our remand, the outstanding issues related only to IR Corporation, Inc., d/b/a IR Construction (IRC), AK Construction (AKC), and Husaeen's alleged loans to MUT and the litigation fund, discussed infra.

3

After a bench trial following our remand, the judge issued a January 26, 2024 order and accompanying statement of reasons denying IRC's request for repayment of the $239,283.81 purported loan because it failed to present evidence sufficient to support the amount requested. The judge concluded, however, AKC's and Husaeen's proofs were sufficient to establish their entitlement to repayment of the $33,843.65 and $16,624 loans, respectively. It further found no basis to award costs under a litigation fund theory. The judge subsequently denied the parties' cross-motions for reconsideration on March 1, 2024.

IRC appeals the January 26 order denying its request for repayment, and subsequent order denying reconsideration. MUT cross-appeals from the January 26 order with respect to the judgment in favor of Husaeen and AKC. We reject the arguments on both the appeal and cross-appeal and affirm.

I.

We restate the relevant facts and procedural history from our prior decision and the trial record. Husaeen, and the non-participating plaintiffs, filed a two-count complaint asserting claims related to an election held on November 17, 2019. Plaintiffs argued defendants improperly removed them from MUT's board in violation of the MUT bylaws. Plaintiffs later filed an amended

complaint adding AKC and IRC as plaintiffs and asserted a third count which concerned repayment of the above-described loans. Defendants answered and filed a motion to dismiss the amended complaint under Rule 4:6-2(e).

The judge entered an order granting in part, and denying in part, defendants' motion to dismiss. The judge denied the request to dismiss the first two counts of the complaint but granted defendants' application to dismiss count three concerning the disputed loans. It concluded the ECD barred the third count because Husaeen had knowledge of the loans prior to filing the original lawsuit.

Plaintiffs subsequently filed a motion for reconsideration as to the dismissal of count three, relying on an affidavit from Husaeen attesting he owned both AKC and IRC. Husaeen further attested, in response to the judge's application of the ECD, the loans were not due at the time of the lawsuit and MUT representatives informed Husaeen, after the original complaint was filed, that MUT had no intention of repaying the loans at issue. Unpersuaded by these arguments, the judge entered an order denying plaintiffs' motion for reconsideration and explained its decision in a written opinion.

Prior to issuing the reconsideration order, the judge held a plenary hearing with respect to counts one and two. In a January 20, 2021 order, the judge granted plaintiffs' application to invalidate the election and awarded plaintiffs

5

attorney's fees and costs. The judge later issued an amended order to correct a "clerical error" in the January 20 order, withdrew her prior award of counsel fees and costs, and instead ordered, as noted, defendants to pay $7,500 into a plaintiff-managed trust account to "satisfy any litigation costs incurred by the litigants." Plaintiffs appealed from the order dismissing count three and from the order denying their motion for reconsideration. Defendants cross-appealed from the order creating the litigation fund.

On appeal, we reversed and remanded. We found plaintiffs asserted a viable claim for repayment of the loans and held the ECD did not apply because Husaeen was not obligated raise those issues in the prior matter as AKC and IRC were not parties to that litigation and there was no evidence presented to pierce the corporate veil and vitiate those entities' independent existence. We further held, even if evidence was presented to treat AKC and IRC as the alter ego of Husaeen, the prior litigation in which Husaeen was a defendant, not a plaintiff, pertained to changes in MUT's structure and governance, not loans, and therefore, the two matters did not "arise from related facts or the same transaction." Husaeen, slip op. at 15 (quoting Wadeer v. New Jersey Mfrs. Ins. Co., 220 N.J. 591, 605 (2015)). Thus, we concluded the judge's dismissal of the

claim pertaining to debt repayment under the ECD was a mistaken exercise of discretion.

With respect to the litigation fund issue, we held we could not perform our appellate function because the judge failed to provide a detailed statement of reasons supporting her decision to award litigation costs. We accordingly remanded for the judge to issue findings of fact and conclusions of law consistent with Rule 1:7-4. We also stated the litigation fund issue could "abide the outcome of the trial or other disposition of plaintiffs' reinstated third count of the complaint."

The remand judge, who was not the judge who presided over the initial proceedings, scheduled a bench trial to resolve the claims between AKC, IRC, Husaeen, and MUT. She also ordered the parties to submit legal memoranda regarding the litigation fund issue. A bench trial was held over four days.

At the commencement of trial, MUT filed a motion in limine to bar introduction or discussion of a prior case in which non-participating plaintiff Mohammed A. Rahim prevailed in proving MUT owed him and his company certain debts. The judge denied MUT's application explaining the proceeding constituted a "new trial" and urged the parties to raise objections as needed. MUT also moved to dismiss count three and, with respect to the purported loan

A-2458-23

from IRC, argued the statute of frauds applied to loans in excess of $100,000 and plaintiffs did not have sufficient documentary evidence to satisfy the statute. Further, MUT contended plaintiffs did not have the requisite board of directors' approval to engage in the loan transactions at issue as the bylaws required transactions in excess of $500 to be approved by the board. The judge denied MUT's motion finding the statute of frauds did not apply and declined to dismiss count three based on the $500 board approval requirement as that rule was "litigated numerous times, and . . . both sides . . . demonstrated . . . [it] was not abided by anyone."

At trial, Husaeen, AKC, and IRC argued they made numerous interest-free loans to MUT; first for renovations to the mosque building, and later for certain operations. In 2019 and 2020 when the loans came due, plaintiffs contended MUT refused to honor them which caused plaintiffs to amend their complaint to seek repayment of the debt. As noted, plaintiffs submitted the total amount due was $289,751.46, broken down as follows: $239,283.81 to IRC; $16,624 to AKC; and $33,843.65 to Husaeen.

Before making her findings with respect to the purported loans, the judge noted she did not find any of the witnesses credible and explained each individual only presented testimony advantageous to their position. She also

8

explained it became clear over the course of trial that each witness had created their own version of events, ignored questions by counsel, was combative and evasive during cross-examination, and responded to the judge's questions with answers intended only to appease the court.

A.

With respect to the alleged loan between MUT and IRC, Husaeen introduced an IRC invoice in evidence totaling $357,864.39 for various projects at the mosque. The signature page of the invoice contained the following language:

> Both part[ies] agree that this work is going to[]be done by [a] special kind of loan. That means [IRC and Husaeen] gave [a] loan to [MUT for] a sum of $357,864.39 . . . . This lo[an] is going to[]be without interest . . . for religious reason[s,] for the period of [ten] years. This due amount shall be paid in full on or before [the ten] year anniversary (10-01-2020) of the signing date.

The invoice also contained a clause stating MUT could purchase materials for the projects itself and have those amounts deducted from the total amount outstanding. Husaeen testified that the MUT Construction, Income, Expenses, and Maintenance Committee members signed the invoice. Mohammed Chowdhury, the then MUT board president, testified no such committee ever

9

existed and, instead, a "Bizarre Committee" existed to purchase "miscellaneous items the Mosque may need."

Plaintiffs introduced a second invoice into evidence reflecting a $118,580.58 credit for materials purchased by MUT which reduced the total due, according to the invoice, to $239,283.81 which, Husaeen testified, consisted of remaining material, supply, and labor costs. Husaeen further testified this second invoice was also signed by members of the purported Construction, Income, Expenses, and Maintenance Committee.

To support the outstanding balance, plaintiffs attempted to admit a "[twelve]-inch high stack of papers purporting to be copies of invoices" for materials and supplies. Because plaintiffs had not "produced in discovery, or prepared for trial, a spreadsheet or other document identifying" the documents or how they corresponded to the $239,283.81 invoice, and also because the judge found those documents would not be helpful in the ultimate determination of the case, she declined to admit them into evidence.

Further, with respect to the labor cost component of the outstanding balance, the judge noted "Husaeen admitted he did not possess any payroll records, 1099s, or other documents reflecting . . . [the] work performed by [IRC] employees or subcontractors," and similarly failed to "provide in

discovery, or in preparation for trial," an explanation for the labor costs reflected in the $239,283.81 invoice. The judge also noted several of MUT's witnesses stated all labor was performed by volunteers.

Plaintiffs submitted various other MUT expense reports which, they argued, proved the existence of the $239,283.81 loan. One such expense report contained a handwritten note reflecting MUT's indebtedness to IRC. MUT objected to the veracity of the document containing the handwritten notes as MUT's copy of the same document did not contain the notes. To resolve the objection, the judge reviewed documents from the file of an earlier case where, as noted, Rahim prevailed in proving MUT owed him and his company certain debts. MUT's counsel withdrew his objection after comparing plaintiffs' submission to the expense report submitted in the earlier case.

After considering the documentary evidence and testimony of the witnesses, the judge concluded plaintiffs failed to establish by a preponderance of the evidence that MUT was obligated to pay IRC $239,283.81. Despite the undisputed fact that MUT engaged in considerable renovation projects around the time of the supposed loan, the judge concluded plaintiffs failed to present detailed documentary evidence establishing IRC's role in the renovations. And, even assuming plaintiffs' exhibits were true and accurate, without documentary

11

evidence post-2015, there was insufficient information to determine the amount of the loan. The judge did find, however, evidence that "more than $118,000 was donated for materials [and] supplies and . . . members volunteered to perform the renovation work." Thus, the judge denied IRC's requested repayment of $239,283.81.

B.

With respect to AKC's loans to MUT, Husaeen testified AKC made five separate loans to fund operations of the mosque totaling $16,624. As support, AKC introduced various loan documents and corresponding check images detailing the loans. The loan documents were signed by Husaeen on behalf of AKC and then secretary of MUT, Mubarak Ahmed, who testified as a plaintiffs' witness that he was the secretary at the time the loans were made and that he signed each of the loan documents from AKC. Husaeen and Ahmed further testified that the loans at issue were approved by the MUT board.

The judge found in favor of AKC, concluding the documentary evidence presented was sufficient for plaintiffs to meet their "burden of establishing by a preponderance of evidence that MUT [wa]s obligated to repay [AKC] loans totaling $16,624." The judge, however, acknowledged the inherent bias in Ahmed's testimony with respect to his signature on the loan documents but

12

found that MUT's witnesses were not credible, MUT did not present documentary evidence to rebut plaintiffs' evidence, and the evidence of Rahim using the same loan documents around the same time period indicated the loans at issue were legitimate. Further, unlike IRC, AKC presented copies of relevant corroboratory checks and similar loan documents.

## C.

Next, Husaeen testified he made three personal loans to MUT totaling $33,843.65. He presented three exhibits, similar to those presented in support of AKC's loans, including loan documents, one of which was accompanied by a copy of the corresponding check. The loans were again signed by Husaeen and Ahmed as secretary. Husaeen and Ahmed each testified the loans had been approved by the MUT board.

The judge found, for similar reasons as those mentioned above, Husaeen met his burden of establishing by a preponderance of the credible evidence that MUT was obligated to repay $33,843.65. Again, despite noting the inherent bias in plaintiffs' witnesses' testimony, the judge found the documentary evidence supported plaintiffs' position and a lack of documentary evidence or credible testimony presented by MUT established that it was more likely than not MUT incurred the debt and was required to repay it.

13

D.

In addressing the litigation fund issue, the judge did "not find any basis in the record, or under the applicable law, to issue [such a] remedy." First, she held plaintiffs did not establish that they were entitled to an award of monetary damages in connection with their claim concerning the November 17, 2019 board election as they did not cite to any relevant legal authority to support such relief and MUT's bylaws did not provide for an award of fees, costs, or other damages under these circumstances.

Second, the judge found no support for the seemingly arbitrary award of $7,500. And third, the judge found no "legal or equitable basis to impose sanctions on [d]efendants, as urged by the . . . [p]laintiffs, as part of the court's 'inherent power' . . . [or] support . . . [for p]laintiffs' argument that the $7[,]500 was imposed as a contempt penalty." The judge, however, noted that plaintiffs, as the prevailing party, could "make an application for an award of taxed costs in the manner and amount set forth in Rule 4:42-8." The parties cross-moved for reconsideration, which was denied. This appeal and subsequent cross-appeal followed.

II.

Before us, plaintiffs argue the judge erred in dismissing IRC's claim based on issue preclusion principles with respect to the veracity of the documents submitted in support of the loan and those submitted in Rahim's case. The crux of plaintiffs' argument, as best we can discern from the record, is that an original of the expense report which MUT objected to was admitted into evidence in a matter involving loans made by Rahim to MUT, survived objections to its veracity in that matter, and is therefore a valid document in this matter, signed in the normal course of business by MUT officials, proving the $239,283.51 loan from IRC. Thus, because MUT is the party against whom issue preclusion is being sought, and it was a party to the prior proceeding, plaintiffs argue issue preclusion bars defendants' arguments as to the expense report's authenticity. Plaintiffs further claim the judge failed to appreciate the lack of evidence presented by defendants.

Next, plaintiffs argue all the documents referencing the IRC loan were counter-signed by MUT officials, MUT did not present any proof of fraud, MUT never called an expert to prove the documents were fraudulent, and further aver Husaeen's testimony was credible with respect to his statements that he was present when the expense report at issue was signed and was never altered.

A-2458-23

Plaintiffs further assert that the judge was aware lay witnesses could not assess whether a document was forged, and highlighted MUT's failure to call an expert and their lack of clear and convincing evidence of a forgery or fraud.

Plaintiffs also contend the judge did not sufficiently elaborate as to why it declined to admit the significant evidence of IRC's work on the mosque. Plaintiffs note MUT did not dispute the mosque was in need of renovations, those renovations were conducted, and contend IRC did the lion's share of the renovations with incidental assistance from volunteers.

Next, plaintiffs argue the judge erred in finding no legal or equitable basis to award costs under a litigation fund theory. Plaintiffs argue the judge improperly followed our remand instructions to articulate the legal and factual bases for the earlier decision and, instead, declined to award the litigation fund in the first instance.

Further, plaintiffs contend the judge had "inherent equitable powers" to impose sanctions on litigants and argue "[i]t is certainly reasonable that the court has discretion to make an allowance for damages the equivalent of which may be future counsel fees to be paid by any party under [Rule] 1:10-3." Plaintiffs also argue "[d]efendants' actions apparently constituted a pattern of continued defiance and a breach of their fiduciary duties to [MUT] and their fellow Board

members" so that the "motion judge was justifiably exasperated." Finally, plaintiffs argue defendants were in violation of the original litigation fund order and the MUT bylaws.

With respect to the cross-appeal concerning the AKC and Husaeen loans, MUT argues the judge erred in granting a judgment in favor of plaintiffs because the "documents submitted into evidence violated the best evidence rule." MUT argues N.J.R.E. 1002 requires original documents to prove the content of a writing unless a genuine question is raised as to the document's authenticity. MUT contends the checks submitted in evidence could have been altered after they were cashed and subsequently photocopied and that the documents evidencing the loan terms could have been made by plaintiffs at any time. Therefore, because the plaintiffs failed to rebut MUT's objections on the grounds of best evidence and failed to explain why they submitted copies, the judgment should be reversed.

In reviewing a judgment issued after a bench trial, "we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). We do not disturb a trial court's factual findings or legal conclusions unless they are so manifestly unsupported by the competent, relevant evidence

that affirmance would constitute an injustice. See, e.g., Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017); Seidman v. Clifton Sav. Bank, 205 N.J 150, 169 (2011); Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). Particular deference is owed to the trial court's assessment of witness credibility because the court was able to observe the witnesses as they testified. Balducci v. Cige, 240 N.J. 574, 594-95 (2020); Seidman, 205 N.J. at 169.

We apply basic contract principles in the context of loans. See CSFB 2001-CP-4 Princeton Park Corp. Ctr., LLC v. SB Rental I, LLC, 410 N.J. Super 114, 120 (App. Div. 2009). A breach of contract lies where a contracting party proves: (1) the existence of a valid contract between the parties; (2) performance under that contract; (3) the other contracting party's failure to perform under that contract; and (4) damages flowing from that failure. Goldfarb v. Solimine, 245 N.J. 326, 338 (2021) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)). A valid contract includes a meeting of the minds, offer and acceptance, consideration, and certainty in the terms of an agreement. Id. at 339.

A.

Here, we discern no reason to disturb the judge's assessment of the documentary evidence and testimony and affirm the monetary judgments awarded in favor of Husaeen and AKC. We further conclude the judge did not err in denying IRC's requested monetary relief because the proofs submitted in support of that purported loan were insufficient to award the specific relief sought.

With respect to the loans made by Husaeen and AKC to MUT, documents were submitted detailing the parties' relationship. Those documents contained the names of the contracting parties, the amounts borrowed by MUT, a clause indicating the loans were to be repaid without interest for religious reasons, and a specific date for repayment. Husaeen and AKC further submitted copies of checks corresponding to the loan documents. Additionally, as noted, Ahmed testified that he signed each of the loan documents on behalf of MUT. Therefore, we conclude the evidence presented is sufficient to prove the existence of an agreement between Husaeen, AKC, and MUT, the undisputed failure of MUT to repay the loans pursuant to the various agreements constitutes a breach, and the judge properly awarded monetary relief accordingly.

19

No such loan documentation and corresponding checks were submitted in support of the alleged funds loaned to MUT by IRC. Instead, IRC submitted an invoice containing language indicating it would perform various construction projects for MUT on credit and offered MUT the opportunity to purchase materials independently to lower costs. The documentation reflects MUT did purchase materials and indicates a reduction in the above-described invoice. IRC also submitted various other internal MUT documents which, it alleged, proved the existence of the loan. Further, as noted, the judge declined to admit evidence to support the alleged material cost component of the $239,283.51 invoice because plaintiff failed to show how such evidence corresponded to the invoice and, with respect to the alleged labor costs, failed to adduce any competent proofs to support the costs.

Despite acknowledging credibility concerns as to both parties' witnesses, the judge clearly credited MUT's witnesses' statements that all renovations were conducted by volunteer workers. The judge's findings with respect to the lack of evidence presented in support of IRC's loans is supported by the record and we discern no basis to disturb it. Finally, we discern no abuse of discretion in the judge's decision to exclude certain purported invoices detailing the material costs. See Brenman v. Demello, 191 N.J. 18, 31 (2007) (holding the trial court

has broad discretion in evidentiary matters); <u>State v. Prall</u>, 231 N.J. 567, 580 (2018) (a trial court's evidentiary ruling is reviewed "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion") (quoting <u>Est. of Hanges v. Metro. Prop. & Cas. Ins. Co.</u>, 202 N.J. 369, 383-84 (2010)).

We reject plaintiffs' issue preclusion arguments with respect to the documents submitted in support of IRC's loans to MUT because such principles are inapplicable to the present circumstances. Application of res judicata "requires substantially similar or identical causes of action and issues, parties, and relief sought," as well as a final judgment. <u>Culver v. Ins. Co. of N. Am.</u>, 115 N.J. 451, 460 (1989) (citing <u>Eatough v. Bd. of Med. Exam'rs</u>, 191 N.J. Super. 166, 173 (App. Div. 1983)). Thus, "where the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second." <u>Ibid.</u>

Here, plaintiffs' arguments ignore the reasoning behind the judge's decision and attempts to bind the remand judge based on the findings of the judge in a different case based in part on different credibility findings, concerning a different loan, made between different parties. First, the judge did not deny relief because she credited MUT's argument that the expense report

with handwritten notes was fraudulently altered. The judge instead made it abundantly clear, based on the incredible testimony of the witnesses and "lack of any records post-2015," there was insufficient evidence to determine the amount of any loan.

Further, the judge in Rahim's matter did not exclusively rely on the expense report in determining MUT defaulted on the repayment of a loan to Rahim. First, the judge in Rahim's matter found the witnesses credible and that they "testified truthfully to the best of their ability and that none of these witnesses attempted to mislead the [c]ourt in any way." This is in stark contrast to the instant matter where the judge did not find any of the witnesses particularly credible. Most importantly, Rahim provided loan documents and copies of checks evidencing the terms and amount of the loans. Therefore, the earlier judge was presented with more concrete evidence of those parties' debtor-creditor relationship than the judge here with respect to the IRC loans. The record fails to show how the judge's decision to deny relief was manifestly unsupported by the competent, relevant evidence such that affirmance would constitute an injustice. Allstate Ins. Co., 228 N.J. at 619; Seidman, 205 N.J at 169; Rova Farms Resort, Inc., 65 N.J. at 483-84.

We also reject MUT's arguments the judge erred in granting relief to Husaeen and AKC because the proofs submitted in support of their claims violated the best evidence rule. Under N.J.R.E. 1002, an original document is generally required to prove the contents of a writing, subject to certain enumerated exceptions. Under N.J.R.E. 1003, a "duplicate . . . is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."

The evidence presented at trial to prove AKC and Husaeen loaned MUT money consisted of one-page loan documents and an accompanying copy of a check which Husaeen testified were originals. Defense counsel did not object to any document's admissibility under N.J.R.E. 1002 when such materials were presented and, even if counsel did, MUT's unsupported contention that the checks and documents could have been altered fails to raise a genuine question as to the documents' authenticity. Indeed, MUT fails to present any evidence to prove such alterations to the documents occurred. Thus, we see no reason to disturb the judge's findings with respect to the AKC and Husaeen loans.

A-2458-23

Finally, we reject plaintiffs' argument the judge erred under a litigation fund theory.[2] "Our jurisprudence has long remained committed to the American rule that litigants bear their own legal fees, and [our] Supreme Court has recognized a 'strong public policy against shifting counsel fees.'" Est. of Burns ex rel. Burns v. Care One at Stanwick, LLC, 468 N.J. Super. 306, 321 n.4 (App. Div. 2021) (first citing Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 404 (2009); and then quoting Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016)).

Here, as noted, we remanded the litigation fund order for the judge to provide a statement of the applicable legal authorities relied upon in granting such relief. On remand, the judge did not find a basis in fact or law to award costs under a litigation fund theory. We agree with the judge's factual and legal conclusions on this issue. Before us, plaintiffs fail to establish they are entitled

---

[2] As best we can discern from the record, when the parties have employed the term "litigation fund," it appears they are referring to the fund in court doctrine. "'Fund in court' is an equitable term of art," Porreca v. City of Millville, 419 N.J. Super. 212, 225 (App. Div 2011), employed when it "would be unfair to saddle the full cost of upon the litigant for the reason that the litigant is doing more than merely advancing his own interests," Sunset Beach Amusement Corp., v. Belk, 33 N.J. 162, 168 (1960). To the extent the parties desire to be compensated for fees and costs under this theory, we find no support in the record to award such relief.

to costs under a litigation fund theory and instead attempt to justify such relief based on the court's "inherent equitable powers to impose sanction[s] on litigants." We find no merit in plaintiffs' arguments.

To the extent we have not expressly addressed any issues raised, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division